THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT E. SAWYER, Appellant.

Fourth Department, November 13, 1981

APPEARANCES OF COUNSEL

*Charles Edward Fagan* for appellant.

*John T. Ward, Jr.,* for respondent.

**OPINION OF THE COURT**

SCHNEPP, J.

After a trial by jury defendant Robert E. Sawyer was convicted of common-law murder in the second degree (Penal Law, § 125.25, subd 1) and felony murder in the second degree (Penal Law, § 125.25, subd 3), and sentenced to an indeterminate term of 25 years to life imprisonment. He appeals essentially on the ground that he was denied his right to counsel at trial.

In our analysis it is unnecessary to consider the facts bearing on the commission of the crime itself and we limit

our consideration to the events relating to the claimed impairment of the right to counsel. Following his indictment on the two counts of second degree murder and two counts of robbery for the shooting death of a cashier at a grocery store, the defendant was arraigned, informed of his right to counsel, and given one week to retain an attorney. On March 9, 1978 he appeared before the court with attorney Charles E. Fagan who informed the court that he was not presently retained to represent the defendant. Fagan inquired, however, about possible conflicts of interest involving the recent transfers of Mr. Ronald Gibb from the Public Defender's office to the District Attorney's office and Mr. Richard Slater from the District Attorney's office to the Public Defender's office. The court stated that there was no conflict of interest created by the transfers because a disassociation had been ordered. The court indicated that if the defendant had evidence bearing on any violation of its order it would hear the matter. The claim that Gibb's transfer to the District Attorney's office created a conflict of interest was not referred to again or developed on the record. On this appeal we concern ourselves solely with the contention that Slater's transfer to the Public Defender's office created a conflict of interest with regard to the defendant's case.

On March 16 the defendant and Fagan appeared again before the court. Upon being informed that the defendant was indigent, the court appointed Mr. Bruce Carpenter of the Public Defender's office to represent him. Defendant refused to consent to the assignment stating, "I don't want the Public Defender". Thereafter, defendant in a letter to the court rejected Carpenter's services. On March 20 at his next court appearance with Carpenter, defendant reiterated his objection to representation by the Public Defender but stated that he nonetheless wanted counsel. The court denied defendant's claim that he had the right to refuse the lawyer assigned by the court and to have specific counsel appointed. Carpenter indicated that the defendant had refused to co-operate with him, and requested that the court appoint an attorney to be in the courtroom with defendant to follow the case. This the court refused to do. Carpenter said that apparently defendant was echoing a

previous argument of Fagan that defendant was entitled to assigned counsel of his choice. The assignment of Carpenter was continued. On March 22 defendant again advised the court that he wanted a lawyer, but that he could not accept the Public Defender, and, thus, he was unable to plead because he did not have counsel. The court entered a plea of not guilty on defendant's behalf. Some colloquy then ensued between the court and defendant during which the court stated, "I am giving you another chance. You may make your own choice. One, represent yourself. Two, be represented by the Public Defender. You have no other choice". The defendant answered that he was not competent to defend himself. On his next court appearance the defendant again expressed his unwillingness to accept the representation by the Public Defender. The court then relieved Carpenter of his assignment and noted for the record that the defendant would represent himself.

Throughout the remaining pretrial proceedings defendant was not represented by counsel. On October 3 defendant met with the court prior to jury selection and was given another chance to accept Carpenter as his attorney. Defendant rejected this offer, restated his desire for counsel, and claimed again that he was not competent to represent himself. Further, he declared that the court had appointed incompetent counsel and that Carpenter did not have a desire to defend him. The court advised defendant that Carpenter had no conflicts in the case and that he was an able lawyer, ready and willing to represent the defendant. Thereafter, the trial began. Defendant was not represented by counsel. In his opening statement he complained about being "forced" to represent himself and the over-all unfairness of the proceedings. Although he denied his guilt, defendant did not actively participate in the trial.

■ We hold that the court, which properly denied defendant's request for a new counsel, committed reversible error in relieving the Public Defender of his assignment to represent defendant and in thus depriving defendant of his right to counsel at the trial.

It is well established that a criminal defendant has the right to retain an attorney of his own choosing *(People v Arroyave,* 49 NY2d 264, 270), but this right does not

encompass the right to an appointed counsel of his choice."[A]s long as assigned counsel are men of ability and integrity, the discretion and responsibility for their selection rest with the court, to be exercised free of outside interference" *(People v Brabson,* 9 NY2d 173, 181). This is not to suggest that an indigent's request for new counsel should be treated casually. Where good cause is shown, assigned counsel should be substituted *(People v Medina,* 44 NY2d 199, 207).

Good cause did not exist in this case. The claim that a conflict of interest was created by Slater's former employment in the District Attorney's office is without merit. We are cognizant of the holding of the Court of Appeals in *People v Shinkle* (51 NY2d 417) that the transfer of a Public Defender to the District Attorney's office creates a conflict of interest which constitutes a per se disqualification of the entire District Attorney's staff from prosecuting a defendant who has been previously represented by the former Public Defender. *Shinkle* has no application, however, to the converse situation which creates no appearance of impropriety or opportunity for abuse of confidence. The danger that previously obtained confidential information will become available to the prosecution simply does not exist when a District Attorney becomes a Public Defender. We conceive of no prejudice to defendant resulting from Slater's former employment; and, indeed, the defendant makes no such claim. Therefore, in the absence of a conflict of interest the court acted properly in denying defendant's request for a change of counsel and in giving him the choice of either accepting the representation by Carpenter or deciding to proceed *pro se.* Defendant chose to do neither. He asserted that he did not want to be represented by a Public Defender, but, at the same time, claimed that he was not competent to represent himself and insisted upon the appointment of an attorney. The court construed these seemingly contradictory representations as a waiver of the right to counsel by defendant and an insistence to proceed *pro se.* They were not.

Clearly, defendant did not meet the requirements that the Court of Appeals has stated for the right to appear *pro se:* "A defendant in a criminal case may invoke the

right to defend *pro se* provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues." *(People v McIntyre,* 36 NY2d 10, 17.) In fact, defendant never requested to represent himself. He insisted throughout the pretrial proceedings and during the course of the trial itself that he was incompetent to represent himself. And once the trial began, he did nothing to assist his defense except to deny having committed the crime (cf. *People v Yates,* 45 AD2d 778).

This case is in many ways similar to *People v Kelly* (60 AD2d 220, affd 44 NY2d 725). In *Kelly* assigned counsel requested to be relieved of his assignment because the defendant told him that he wanted "Allah" as his attorney. When asked by the court if that was his wish, defendant responded that "Allah" would advise him. The First Department, citing *People v McIntyre* (36 NY2d 10, 17, *supra),* ruled that, in view of the defendant's responses that he wanted his attorney dismissed but did not want to represent himself, the court had no choice but to deny defense counsel's request to be relieved of counsel and to continue the representation of defendant by his assigned counsel *(People v Kelly,* 60 AD2d 220, 224, *supra).*

This is precisely the course which the court should have taken in this case (see *United States ex rel. Testamark v Vincent,* 496 F2d 641). Despite defendant's insistence that his attorney be dismissed, he clearly did not want to represent himself. The conviction of an indigent defendant cannot stand if he was not represented at trial, unless there has been an intelligent and competent waiver of counsel *(Faretta v California,* 422 US 806). Carpenter should not have been relieved of his assignment. Defendant did not waive his right to counsel.

This is not the situation, as the dissent suggests, where the defendant's "refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver" *(Maynard v Meachum,* 545 F2d 273, 278). A defendant may be properly given the choice of co-operating with his appointed attorney, or representing himself. That decision, however, is

personal to the defendant. Here the court itself, when it relieved competent counsel in advance of trial, made the decision that defendant would defend himself.

Accordingly, the judgment of conviction should be reversed and a new trial granted.

SIMONS, J. P. (dissenting). The judgment should be affirmed. Defendant made a knowing and constitutionally acceptable election to proceed *pro se* when he refused to accept properly assigned counsel without good cause. That he also stated that he did not wish to represent himself and his decision was constrained by the court's ruling does not alter the fact that he "voluntarily" chose by default one of the only two alternatives available to him. The right to counsel and the right to proceed *pro se* are "two faces of the same coin" *(United States v Plattner,* 330 F2d 271, 276) and defendant must elect (or, if you wish, waive) one or the other; he cannot have it both ways.

The majority rejects defendant's claim that assigned counsel was disqualified, but it holds that the court committed reversible error as a matter of law by not directing the unwanted attorney to remain available in the courtroom to advise defendant during the trial. In so holding, it relies on *People v Kelly* (60 AD2d 220, affd 44 NY2d 725). That decision, however, is inapposite. The court in *Kelly* did not hold that the court was required to direct advisory counsel to remain in the courtroom during trial in cases such as this — only that it was not error to do so. In fact, the trial court considered such a solution here but decided against it. We think that it was correct in its decision. Ordering counsel to remain in the courtroom may have been an appropriate exercise of discretion under the rule in *Kelly,* but it was not mandatory, and the court's failure to do so did not constitute reversible error. The only question on this appeal is whether defendant properly exercised his right to assistance of counsel or waived it. The court's assignment or failure to assign a lawyer to remain in the courtroom would not alter that determination, for if defendant did not waive his right to counsel a direction that counsel remain available throughout the trial would not correct the situation and accord defendant the full representation to which he was constitutionally entitled.

Some background is necessary. Most of the facts are found in the record but a few additional and undisputed details which aid understanding are supplied in defendant's brief.

On February 11, 1977 a teen-age girl, Jeanne Humm, was shot twice in the head and killed during the robbery of Hogan's Hut, a grocery store in Stow, New York. As a result of the crime, defendant was indicted for two counts of murder, second degree, and two counts of robbery, first degree. He was eventually located in Maine, extradited to New York and after a jury trial was convicted of two counts of murder, second degree. The crime was unwitnessed but the People convincingly established defendant's guilt through the evidence given by 36 witnesses and contained in 45 exhibits.

When defendant first appeared in court on March 2, 1978, the matter was adjourned so that he might obtain counsel. He appeared a week later with Charles Fagan, his counsel on this appeal. Defendant had not retained Fagan because he was indigent, but Fagan appeared for him (and apparently other indigent defendants as well) as "informal" counsel pending the court's assignment. Before January 5, 1978 Fagan, a Democrat, had been the Public Defender of Chautauqua County. On that date the County Legislature replaced him by appointing the present incumbent, Richard Slater, a Republican and a former Assistant District Attorney.[1] Because of this change in the Public Defender's office, the trial court, by order of January 3, 1978, disqualified Slater from all the Public Defender's pending cases and it directed the Chief Assistant Public Defender, Bruce Carpenter, a hold-over employee with considerable trial experience, to handle those files and to insure that Slater had nothing to do with them. Nevertheless, when Mr. Fagan appeared with defendant in March, he asserted generally that a conflict existed in the Public Defender's office which required the assignment of alter-

1. Sometime during the period involved, an Assistant Public Defender, Ronald Gibb, was hired by the District Attorney's office as an assistant. The record does not establish dates or details of the change (see majority opn, p 206). That change in personnel may be the basis for a posttrial application, but the precautionary steps ordered by the court to avoid prejudice to defendant apparently complied with the law at the time (see *People v De Freese*, 71 AD2d 689; *People v Cruz*, 60 AD2d 872; cf. *People v Shinkle*, 51 NY2d 417).

native, outside counsel to represent defendant. The same grounds were to be repeated in several subsequent court appearances and in letters to the Judge from defendant. The court denied defendant's request and assigned Mr. Carpenter to represent him. It stated to defendant and Mr. Fagan, however, that it would consider specific allegations of conflict or other grounds for change of counsel or, alternatively, that it would direct assignment of counsel from the Public Defender's office other than Mr. Slater or Mr. Carpenter, if defendant wished. The court refused to appoint outside counsel, however, because it found no ground necessitating that it subject the county to additional expense by doing so.

This impasse continued through several court appearances extending over several months. The position of defendant never changed despite the court's ruling. Although defendant's claim of prejudice because of the conflict was never supported orally or by formal motion papers, he repeatedly asserted that he refused to "consent"[2] to the assignment of the Public Defender's office but insisted nevertheless, that he required an attorney because he was incapable of defending himself.

Finally, in May, 1978, still refusing to accept the assignment of the Public Defender, defendant brought a *pro se* proceeding in the Appellate Division seeking new assignment of counsel and an order enjoining the trial court from proceeding. Although we denied that application on May 15, 1978, defendant continued to assert that he had a legal right to new counsel and that he was incapable of defending himself. He refused to co-operate with the Assistant Public Defender or to discuss his case with him. Finally, when ordered to trial, defendant refused the assistance of the Public Defender and subsequently, during *voir dire* of the prospective jurors, he asked that he be excused from the proceedings.

This conduct in the face of the court's ruling (a ruling which we have unanimously upheld on the two occasions

2. Section 717 of the County Law provides in part: "1. The public defender shall represent, without charge, at the request of the defendant, or by order of the court with the *consent of the defendant,* each indigent defendant" (emphasis added). Defendant apparently believed this statute gave him a veto power over the assignment of the Public Defender.

we have considered it) constituted a valid waiver of counsel.

The right of a criminal defendant to assistance of counsel is guaranteed by the Federal and State Constitutions (US Const, 6th, 14th Amdts; NY Const, art I, § 6). Once viewed as little more than the right to the assistance of retained counsel, it is now clear that in most cases a defendant is not only entitled to counsel but also that he is entitled to have legal assistance supplied to him at public expense if he is indigent and cannot retain his own lawyer (see *Argersinger v Hamlin,* 407 US 25; *Gideon v Wainwright,* 372 US 335; *Powell v Alabama,* 287 US 45; see *People v Arroyave,* 49 NY2d 264, 270; *People v Brabson,* 9 NY2d 173). Moreover, although an indigent defendant is not entitled to counsel of his choice, he may request and receive a new assignment for good cause *(People v Medina,* 44 NY2d 199, 207).

The other side of the coin is that a criminal defendant has a constitutional right to waive counsel and represent himself (see *Faretta v California,* 422 US 806). This right has been recognized by the courts with some misgivings stemming from two disparate considerations, the understandable apprehension that a defendant may harm his cause through ignorance or inexperience and concern over preserving the procedural integrity of the trial and public confidence in the judicial process. Stated another way, the courts, quite properly, must ensure not only that justice is done but that it appears to be done. The right of self-representation cuts against these considerations because it is an unusual defendant who is competent to provide himself with a proper defense. Nevertheless, a defendant may represent himself in spite of his lack of expertise, because the right to determine one's own destiny is one of the most cherished principles in our culture (see *People v McIntyre,* 36 NY2d 10, 14). A defendant is entitled to be master of his own fate and "respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice 'with eyes open'" *(United States ex rel. Maldonado v Denno,* 348 F2d 12, 15). Regardless of the rashness of the choice, it is clear that a defendant's election to proceed *pro se* may not

be denied solely because he is unschooled in the law or unfamiliar with the courts.

In the usual case, the defendant requests the right to represent himself. That being so, the court is concerned not only with the question of waiver but also the timeliness of his request and his conduct (see, generally, *People v McIntyre,* 36 NY2d 10, *supra,* and cases cited therein). In this case, however, where the election is imputed to him, the court is concerned only whether it appears from the surrounding facts and circumstances that defendant has intentionally abandoned a known right or privilege (see *Johnson v Zerbst,* 304 US 458, 464; see, also, *Faretta v California,* 422 US 806).

We have no difficulty in looking behind the words of this defendant and, after examining his actions, determining that he elected to proceed without counsel. At the time of trial defendant was 31 years old and not unfamiliar with the criminal justice system. He was advised repeatedly of his rights and of the alternatives available throughout the proceedings. Nothing in the record suggests that he did not understand the court's rulings or the alternatives open to him — only that he disagreed with them. Moreover, he was aware that the alternative to his rejection of the Public Defender was a *pro se* defense without counsel in the courtroom to advise him in an emergency. Knowing all this, he refused the assistance of assigned counsel. We see no reason why he should not be charged with the consequences of his acts just as other defendants have been charged with waiving their constitutional rights because of their disorderly conduct (see *Mayberry v Pennsylvania,* 400 US 455 [self-representation]; *People v Palermo,* 32 NY2d 222 [confrontation]), or because they failed to participate in the trial (see *People v Aiken,* 45 NY2d 394 [confrontation]). Defendant's conduct was deliberate and calculated and it was sufficient to establish a knowing and voluntary waiver of his right to counsel. As another court has said, the waiver must be the product of free and meaningful choice but "[t]his does not mean that the decision must be entirely unconstrained. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the

choice presented to him is not constitutionally offensive * * * The record in this case indicates that, while [defendant] did not affirmatively wish to represent himself, when given a clear choice between proceeding with counsel already appointed or going pro se, he elected the latter * * * His decision was therefore 'voluntary' unless that choice placed him in a dilemma of constitutional magnitude" *(Maynard v Meachum,* 545 F2d 273, 278; see, also, *United States ex rel. Testamark v Vincent,* 496 F2d 641, 643-644, cert den 421 US 951).

The second consideration, that it appear justice has been done, has undoubtedly influenced the members of the majority in their decision. Thus, they hold that if the court had only continued Carpenter's assignment and directed him to remain in the courtroom, there would be no ground for reversal; in effect they hold that the appearance, if not the fact of legal assistance, would have been satisfied by that course of action. We agree that the presence of trial counsel, even if unheeded by defendant, may serve several legitimate purposes. Not the least of these is that counsel's presence permits the Trial Judge to preside with detachment, whereas, without counsel the Judge may be confronted with the need to help an obviously confused or misguided defendant, or conversely, to interrupt or quiet one who has gotten out of control. In either case, the Judge may be required to "get into the case" with a consequent risk of committing error or appearing biased. Moreover, the presence of assigned counsel, even if unwanted and unused, gives a ready answer to critics — that we have done everything possible. But while the presence of a lawyer, unwanted and unused by the defendant, may be helpful to the court in these troublesome cases, the lawyer can hardly fulfill defendant's constitutional rights to assistance and the issue before the appellate court must narrow down to a question of waiver. In this case defendant continuously refused to discuss the case with Mr. Carpenter and his election to proceed *pro se* was made after the court had stated that no counsel would be present during trial. Under the circumstances, defendant waived the right to claim on this appeal that the court erred in excusing counsel from the case.

Finally, we are constrained to add that we are at a loss to know what purpose will be served by this reversal. Since we have twice approved Mr. Carpenter's assignment, the trial court, on remittitur, may properly assign him again. Thus, the case will be retried almost five years after the crime (if the People's extensive circumstantial evidence can be reassembled) without defendant having any different or better legal assistance than was available to him at the first trial. Neither justice nor the appearance that justice has been done is satisfied by such a result. The reasonable interpretation of defendant's conduct here is that he waived his right to counsel at the time of trial and he should be held to that election on this appeal.

The judgment should be affirmed.

HANCOCK, JR., and DENMAN, JJ., concur with SCHNEPP, J.; SIMONS, J. P., and MOULE, J., dissent and vote to affirm the judgment in an opinion by SIMONS, J. P.

Judgment reversed, on the law and facts, and a new trial granted.