**STATE of Maine**

v.

**Donald AYERS.**

Supreme Judicial Court of Maine.

Argued March 18, 1983.

Decided Aug. 31, 1983.

Charles K. Leadbetter, Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Stern & Goldsmith, J. Hilary Billings (orally), Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER * and WATHEN, JJ.

WATHEN, Justice.

Defendant Donald Ayers appeals from his conviction for murder, 17–A M.R.S.A. § 201 (1983), resulting from a jury trial in Superior Court (Washington County). On appeal, defendant argues that the court erred in: (1) refusing to permit defense counsel to withdraw from representation, (2) failing to declare a mistrial after a testimonial reference to the co-defendant's confession, (3) admitting a gun and money found pursuant to the alleged illegal confession of the co-defendant, (4) admitting a copy of the victim's will and a copy of a firearms log in contravention of the best evidence rule, and (5) admitting prior recorded testimony of the defendant. We find no error and deny the appeal.

On the night of April 6, 1979, John Cheponis was shot and beaten to death in the J–P Cash Market in Presque Isle. The victim's former wife, Barbara Thibodeau, and defendant Donald Ayers were each indicted and charged with one count of conspiracy and one count of murder. On July 25, 1980, following a jury trial, both defendant and Barbara Thibodeau were convicted as charged. On appeal, this Court upheld both conspiracy convictions but set aside the convictions of murder. *State v. Ayers,* 433 A.2d 356 (Me.1981). Donald Ayers was subsequently retried and convicted of murder on October 17, 1981. The presiding justice granted a defense motion for a new trial and, following a change of venue, a third jury trial resulted in the murder conviction now on appeal.

## I.

Ten days before the scheduled commencement of the third trial, both of defendant's counsel filed application for leave to withdraw, asserting that they had been appointed to represent defendant, that they had already unsuccessfully represented him in

two jury trials, and that defendant had requested counsel to withdraw from the case and sought the appointment of other counsel. At hearing, one of defendant's counsel explained as follows:

> The final note, it's always been my personal experience that I've never had good luck representing clients who don't want to be represented by me. I find it very difficult to get along with them in most cases. And this case being a murder case, I would consider the establishment of a trust between attorney and clien. very important.

After being questioned by the presiding justice, defendant stated that he did not have confidence in his counsel and did not feel that he was being properly represented. Defendant explained that he had not presented his request earlier due to the fact that he had only learned of the date of his new trial the week before. He also stated that for the past two or three months he had been trying to get the name of a "good criminal lawyer" from his fellow inmates at the Maine State Prison.

Defendant suggested two names as possible replacement counsel. The presiding justice responded that one of these attorneys was out of the country and that the other, a Portland lawyer, "is not going to travel to Machias for a court appointed case. I haven't talked to him, but I can guarantee it." After defendant expressed his willingness to have the court select another attorney, the presiding justice stated: "There is no one in this state who would be willing to take this case and try it next week."

The presiding justice commented further: "Mr. Ayers, I really have a problem with what, in effect, is just a back door way to get a continuance in this case." Defendant responded that he was not seeking a continuance, and his counsel, noting defendant's present incarceration, stated: "I don't see any way a continuance could help him." The presiding justice replied:

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

Well, it—it helped Mrs. Ayers,[1] arguably, because—and it's a matter that is pretty obvious. I don't think I'm speaking out of turn. Mr. Ayers is a necessary, or at least the State hopes to make him a witness against Mrs. Ayers. That's why to get his trial over with first so that the privilege problem is disposed of. And her trial is already one year after the Law Court's reversal. Recognizing that the bulk of that delay has, to date, been the fault of the defense because of the shift in counsel there, nonetheless it's time to retry that one, and as a matter—it's not that I'm siding with the State in setting Mr. Ayers as a witness, but the fact of the matter remains that the practical way to try these trials is Mr. Ayers first and then Mrs. Ayers.

Ultimately, the court ruled:

[T]he upshot of this is, Mr. Ayers, that I am not convinced that your request for change of counsel is the product of any reasoned evaluation of your attorneys' performance in the prior trials. I think there are some underlying motives. Certainly neither [of the two suggested counsel] is available to represent you, and I know of no lawyer who is available to represent you on the short-term basis that we have here. I am not at all inclined to grant a continuance. The matter has been pending for a long time, and whatever—whatever the situation here, I've heard nothing that convinces me that the situation is so bad that you cannot get competent representation from the people who are most familiar with the case and who have represented you in the past, and I'm going to deny the request to withdraw this counsel. The matter will proceed as scheduled on July 12th.

Defendant argues on this record that he was deprived of the right to counsel by the court's refusal to permit a change in representation.

◼ The right to counsel guaranteed by the Sixth Amendment is indeed a cornerstone of our national system of ordered liberty. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The importance of counsel in our criminal adversary system is unquestioned, but it is well recognized that a criminal defendant's absolute right to counsel does not confer upon him an absolute right to counsel of his choice. Balancing an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections, the cases uniformly hold that the right of an accused to the assistance of counsel, "cherished and fundamental though it be," *United States v. Fowler,* 605 F.2d 181, 183 (5th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980), cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair, efficient and effective administration of justice. *See, e.g., United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *United States v. Poulack,* 556 F.2d 83, 86 (1st Cir.), *cert. denied* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *Lofton v. Procunier,* 487 F.2d 434, 435 (9th Cir.1973); *Thorne v. State,* 269 Ark. 556, 560, 601 S.W.2d 886, 889 (1980); *Commonwealth v. Connor,* 381 Mass. 500, 503, 410 N.E.2d 709, 711 (1980); *State v. Addison,* 197 Neb. 482, 485, 249 N.W.2d 746, 748 (1977); *Commonwealth v. Baines,* 480 Pa. 26, 30, 389 A.2d 68, 70 (1978).

◼ A court need not tolerate unwarranted delays, and, if in the sound discretion of the court the attempted exercise of choice is deemed dilatory or otherwise subversive of orderly criminal process, the court may compel a defendant to go to trial even if he is not entirely satisfied with his designated attorney. *Lofton,* 487 F.2d at 435; *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976). The United States Supreme Court has recently held that the

---

1. Donald Ayers and Barbara Thibodeau were married following their arrest. *See State v. Ayers,* 433 A.2d at 358 n. 1. At the date of this hearing, Barbara Thibodeau Ayers was await-ing retrial after her murder conviction had been set aside. The docket entries reflect that she has been afforded an opportunity to change counsel as the case against her has progressed.

Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy,* —— U.S. ——, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).[2] In so holding, the Court recognized the important countervailing interests of the State in avoiding unnecessary delay so as to do justice with regard to both the defendant and others whose rights to a speedy trial may thereby be affected. *Id.* at ——, 103 S.Ct. at 1616–17. *See also Baines,* 480 Pa. at 30, 389 A.2d at 70. Indeed, "the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *Burton,* 584 F.2d at 489.

■ In this case, defendant challenges the denial of his motion for withdrawal of counsel and the denial of a continuance which would have resulted therefrom. It is firmly established that whether a continuance will be granted on the ground that more time is required to obtain adequate legal representation at trial in a given case rests entirely within the sound discretion of the presiding justice and the decision will not be reversed absent a clear abuse of that discretion. *State v. Stinson,* 424 A.2d 327, 332 (Me.1981). A continuance which is sought to retain or replace counsel implicates the Sixth Amendment right to the assistance of counsel and, in such circumstances, "the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice." *Burton,* 584 A.2d at 489. However, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy,* —— U.S. at ——, 103 S.Ct. at 1616, *quoting Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

■ Defendant has failed to demonstrate any abuse of discretion. The remarks of the presiding justice could, if considered out of context, be construed as expressing an inappropriate concern for the effect of the requested ruling upon the position of the State. However, a reading of the entire record establishes that the trial court was not advancing that concern as a basis for denying defendant's motion. Rather, the trial justice was expressing its concern that defendant's motion was motivated *solely* by tactical considerations, specifically to compel the State to try his wife's case first and to avoid having to testify against her at her trial, rather than by any deficiency in the performance of counsel. Notwithstanding counsel's remark that he had "never had good luck representing clients who don't want to be represented by me," the record does not compel a finding that counsel was inadequately prepared for or unwilling to proceed with the defense case. In fact, having represented defendant in the two prior trials, counsel was certainly in a more informed position than would be any newly appointed counsel. *See* ABA Standards for Criminal Justice 5–5.2 (2d ed. 1980).

The judgment of the presiding justice should be afforded considerable deference. Unfounded requests for the appointment of new counsel on the virtual eve of trial should not become a vehicle for achieving delay. No error was committed in the denial of the motion for withdrawal of counsel.

## II.

■ During his cross-examination of State Police Detective Ames, defense counsel questioned him about a conversation he had had with defendant. Counsel asked: "Okay, did you relate to him any information that you received from Barbara [Thibodeau]?" Ames responded: "I may have told him that—that she had confessed." At sidebar, counsel moved for mistrial and

---

**2.** We interpret this language employed by the Court as simply a rearticulation of the well established principle that the Constitution guarantees criminal defendants only a fair trial and a competent attorney as necessary to in-

sure an adequate defense. *See Engle v. Issac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). *See also State v. Anaya,* 456 A.2d 1255, 1263 (Me.1983).

stated that he had not intended to elicit that response. The court denied the motion, stating: "You can't expect these guys to keep dodging open holes you keep leaving."

Despite the fact that the court gave two separate curative instructions in form approved by defense counsel, the defense now argues that reversal is required because the fact of co-defendant's confession was put before the jury. The doctrine of invited error, however, does not permit such a result. Having knowingly invited the response from Detective Ames, the defense cannot now claim reversible error. *State v. Wilson,* 456 A.2d 1276, 1279 (Me.1983), *State v. Gray,* 407 A.2d 19, 20–21 (Me.1979).

### III.

■ Defendant argues that the court erred in admitting the murder weapon and testimony of one of the police officers about finding money in Barbara Thibodeau's house that had been taken from the J–P Cash Market. In effect, the defense challenges the suppression hearing held before the start of the *second* trial. At that hearing, the court heard testimony from defendant and argument from counsel on defendant's motion to suppress the pistol found by the police in the Aroostook River, and the money found in Barbara Thibodeau's home. The court denied the defense's motion to suppress the pistol and money on the basis of defendant's lack of standing.

Defendant does not challenge the denial of the suppression motion on traditional grounds. Instead, defendant asserts that the State's failure to produce any record evidence at the suppression hearing compels the conclusion that the State did not meet its burden of proof on the issue of suppression. That assertion, however, overlooks the fact that *defendant* had the initial burden of establishing a violation of his constitutional rights. *See United States v. Dall,*

608 F.2d 910, 914 (1st Cir.1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980). The State had no burden to produce evidence until defendant's standing had been established. The denial of the suppression motion, accordingly, was not "clearly erroneous," *State v. Philbrick,* 436 A.2d 844, 854–55 (Me.1981), and no error was committed by the presiding justice in admitting the gun and the testimony regarding the money into evidence.

### IV.

■ The defendant next argues that the court erred in admitting into evidence a copy of the victim's will and a copy of a page from a firearms log establishing defendant's purchase of bullets from a Florida hardware store. Defendant objected to the introduction of both documents on the basis of the best-evidence rule. M.R.Evid. 1002–1004. Defendant contends that because the State could have obtained the originals of both the will and the firearms log, the admission of copies into evidence was error. Defendant's position, however, is lacking in merit.

The determination of "[a]ll preliminary matters which must be established to make secondary evidence admissible are questions of fact for the court and . . . subject to the sound discretion of the trial Justice . . . ." *State v. Lewis,* 373 A.2d 603, 611 (Me.1977). Defendant has shown no abuse of discretion. Further, defendant did not contend at trial, nor does he now contend, that the copies are in any way inaccurate. Given these circumstances, any error would be harmless. "[I]f complaining counsel is asked whether there is an actual dispute as to the terms of the writing and he cannot give assurance that such a good faith dispute exists, any deviation from the rule should be harmless error." *State v. Cyr,* 389 A.2d 834, 836 n. 1 (Me.1978), quoting Advisor's Note to M.R.Evid. 1004).[3]

---

**3.** *Accord, United States v. Georgalis,* 631 F.2d 1199, 1205 (5th Cir.1980) (applying Federal Rules of Evidence). Under Fed.R.Evid. 1003, a "duplicate" is admissible "unless (1) a genuine

question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

## V.

The final issue raised by defendant on appeal is totally lacking in merit and requires no discussion.

The entry is:

Judgment of conviction affirmed.

McKUSICK, C.J., and GODFREY and WATHEN, JJ., concurring.

NICHOLS, Justice, dissenting.

What compelling state interest was served by requiring this indigent Defendant, Donald Ayers, to stand trial for the third time for murder, represented only by two attorneys who were unsuccessful in his defense in the two previous trials on the same indictment for murder, whose removal from the case for good cause this Defendant had sought, and who themselves had asked leave to withdraw from the case?

The answer is none.

Moreover, it is a defendant's confidence in his counsel which is critical to the effective presentation of a defense, not the confidence of the presiding justice in the counsel who had been appointed.

Upon learning that the case was again being set for jury trial, the Defendant promptly sought the appointment of counsel to defend him other than those lawyers who had represented him in the two losing efforts. For reasons not disclosed by the record, counsel let a week go by before they made this request known to the presiding justice; when they did, still ten days before the trial was scheduled to begin, counsel themselves also asked leave to withdraw. The presiding justice was adamant, announcing that the Defendant's move was "in effect, just a back door way to get a continuance," a charge which the Defendant expressly denied. So the murder trial ensued, with the same reluctant lawyers at counsel table presenting a less than zealous defense.[1] The jury found him guilty.

On this sorry record today's majority conclude that the Defendant had in that trial the effective "Assistance of Counsel for his defense" which, through the Fourteenth Amendment, the Sixth Amendment to the United States Constitution guarantees to every accused in our courts.

In the phrases of Mr. Justice White, it is a "tenuous and unacceptable legal fiction" to suggest that unwanted counsel "represents" a defendant. The defense presented by such counsel is not the defense guaranteed the accused by the Constitution "for in a very real sense, it is not *his* defense." *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975).

The majority elevate form over substance. I cannot concur.

I take my stand with the United States Supreme Court when it declares:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae.

*Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

I prefer to stand with Judge Oakes when for a panel in the Second Circuit he observes that the right to counsel is perhaps the most crucial right afforded criminal defendants, and counsel's unwillingness to present particular arguments which a defendant may request functions to abridge that defendant's right to counsel on appeal. *Barnes v. Jones,* 665 F.2d 427, 433 (2d Cir. 1981).

The importance of "the guiding hand of counsel," *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), in our criminal justice system requires no reiteration. "In an adversary system of criminal justice, there is no right more essential than the right to the assistance of counsel." *Lakeside v. Oregon,* 435 U.S. 333, 341, 98

---

1. In particular, it should be noted the limited cross-examination of certain key witnesses for the State and counsel's stipulation to the admission of much of the State's evidence were indicative of the uninspired nature of the defense.

S.Ct. 1091, 1096, 55 L.Ed.2d 319 (1978). It is only through the effective assistance of counsel that an accused is able to translate the full panoply of constitutional guarantees into personal rights that may aid his defense.

Effective assistance of counsel is of cardinal importance to an accused, whether he be wealthy or indigent. It is self-evident that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). Accordingly, the provision of effective assistance of counsel for the indigent defendant is not a matter of governmental largesse; it is a constitutional requirement. *See Argersinger v. Hamlin,* 407 U.S. 25, 37–38, 92 S.Ct. 2006, 2012–2013, 32 L.Ed.2d 530 (1977); *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. at 71–72, 53 S.Ct. at 65.

We face today the question of whether, under the unusual circumstances of this case, the presiding justice erred in denying the application of the Defendant's appointed counsel to withdraw from the case.

For several reasons I submit that the Superior Court erred in denying defense counsel's application to withdraw. First, although an indigent defendant may not always have a right to counsel of his choice,[2] clearly he has the right to substitution of counsel for "good cause."[3] The Commentary to the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, § 5.3, p. 51, states it well:

> Since a relationship of mutual confidence between lawyer and client is important to the lawyer's fulfillment of his professional functions, where good cause is shown by the defendant why that confidence does not exist the court should substitute counsel."

Twice represented by these attorneys and twice convicted of murder, as soon as the Defendant knew that a third trial was imminent, he conveyed to the Superior Court his dissatisfaction with counsel, his loss of confidence in them and his inability to communicate reasonably with them. Referring to prior experience with unwilling clients and the special need for a relationship of trust in a case such as this, the attorneys expressed their desire to terminate the relationship. This in the aggregate constituted "good cause."

Second, in denying the withdrawal application the presiding justice gave undue consideration to the State's interest in adhering to the announced schedule so that the Defendant would not be able to assert any privilege at his wife's forthcoming trial. This matter was clearly extrinsic and irrelevant to the question of whether the Defendant merited new counsel in this case and should not have had any bearing on this decision. Furthermore, it was the justice who introduced the subject of potential impact on the wife's trial at a time when the justice's attention should have been focused on what was fair to this Defendant in his trial. In the course of discussing this potential impact, the justice abruptly shifting gears, announced that the Defendant had "some underlying motive." This was conjecture on the part of the justice; it was not a matter of proof.

Third, the circumstances of this case were such that the State's case would have suffered little even if—as assumed by the presiding justice—the substitution of counsel might have involved some delay. All the

---

**2.** Tague, An Indigent's Right to the Attorney of His Choice, 27 Stan.L.Rev. 73, 96–97 (1974); Annotation: Indigent Accused's Right to Choose Particular Counsel Appointed to Represent Him, 66 A.L.R.3d 996 (1975).

**3.** *See McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981); *United States v. Burkeen,* 355 F.2d 241, 245 (6th Cir.) *cert. denied sub. nom. Mat-* *lock v. United States,* 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); *People v. Medina,* 44 N.Y.2d 199, 207, 404 N.Y.S.2d 588, 592, 375 N.E.2d 768, 772 (1978); *Thomas v. States,* 94 Nev. 605, 584 P.2d 674, 676 (1978); *Commonwealth v. Velasquez,* 437 Pa. 262, 265, 263 A.2d 351, 353–44 (1970).

testimony of the State's witnesses was safely preserved in the transcripts of the previous trials. The Superior Court has, to be sure, a legitimate and appropriate interest in "moving the docket," but matters of administrative convenience must be deferred until the court has taken steps to assure the individual accused of a fair trial.

Taking these three factors together, in the circumstances of this case the Superior Court's denial of defense counsel's application to withdraw and failure to appoint new counsel constituted an abuse of discretion.[4]

To compel this Defendant, as the Superior Court did, to undergo a trial for murder with only the assistance of attorneys with whom he could not reasonably communicate and with whom conflicts of opinion had developed was, in effect, to deprive him of any counsel whatsoever. *Cf. Brown v. Craven,* 424 F.2d 1166 (9th Cir.1970).

An indigent's request for new counsel should never be treated in such a cavalier manner. Where good cause can be shown, new counsel should be substituted. *People v. Sawyer,* 83 A.D.2d 205, 443 N.Y.S.2d 926, 928 (1981).

The value in interest here is the court's duty to refrain from unreasonable interference with the individual's desire to defend himself in whatever manner he deems best, using every legitimate resource at his command. *Smith v. Superior Court of Los Angeles County,* 68 Cal.2d 547, 68 Cal.Rptr. 1, 9, 440 P.2d 65, 73 (1968). *Cf. People v. Gzikowski,* 32 Cal.3d 580, 186 Cal.Rptr. 339, 343, 651 P.2d 1145, 1149 (1982). An individual's desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or a disruption of the orderly processes of justice unreasonable under the circumstances of the case. *Id.*

*See generally* Carrington, The Right to Zealous Counsel, 1979 Duke L.J. 1291; R. Herman, E. Single and J. Boston, Counsel for the Poor, 173–74 (1977).

While the error of the Superior Court in denying defense counsel's application to withdraw is the issue on appeal, the anomoly of this case is that, first, the Superior Court ruled on a motion to continue which was never made, and in fact disavowed by the Defendant; and, second, today's majority, after discussing "unwarranted delays," proceeds to sustain on appeal this denial of a motion to continue which was never made!

While the majority are citing with approval *Morris v. Slappy,* —— U.S. ——, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), this case is distinguishable on several scores. Here the Defendant asked for new counsel as soon as he learned that a third trial had been scheduled. Here the previously appointed counsel asked leave to withdraw. Here the Defendant had been through two trials represented by these attorneys with unsatisfactory results.[5]

Today's majority indulges in the same assumptions that the presiding justice implicitly made: that, of course, the Defendant would be found guilty and that his request—made almost three weeks before trial—was a delaying tactic and nothing more. The result—an indigent Defendant on trial for murder, represented by counsel in whom he had lost confidence, with whom he could not reasonably communicate, and who themselves wanted to withdraw from the case—was nothing more than a contrived cosmetic. The Defendant's "right" to counsel in this case became an empty formality, far short of what the Sixth

---

**4.** Parenthetically, it may be noted that, after losing the first appeal which the Defendant brought to our Court, the State took the opportunity to change counsel for the present appeal. It would have been no more than even-handed justice to have accorded this Defendant a similar opportunity to substitute new counsel for the old.

**5.** It may be noted that after compelling the Defendant to go through a third trial with the same reluctant counsel, the Superior Court did permit different counsel to appear for the Defendant on this appeal.

Amendment was intended to guarantee to every accused.

The Superior Court may have gone through the motions, but, denying the Defendant counsel who had his confidence and with whom he could communicate effectively, it deprived him of his day in court. The perfunctory defense which the court permitted Donald Ayers was not, I submit, effective assistance of counsel. It was a sham.

I would sustain his appeal.