**STATE of Maine**

v.

**Rick Marcel BARRETT.**

Supreme Judicial Court of Maine.

Argued May 29, 1990.

Decided July 6, 1990.

1168

James E. Tierney, Atty. Gen., Wayne Moss, Linda Conti (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Paul Macri (orally), Valerie Stanfill, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Defendant Rick Marcel Barrett appeals his conviction for murder (17-A M.R.S.A. § 201(1)(A) (1983 and Supp.1989)) following a jury trial in Superior Court (Lincoln County, *Delahanty, J.*). Defendant argues on appeal that the Superior Court erred in denying his motion for appointment of an expert in affective disorders, in finding that he was competent to continue to stand trial after defendant attempted suicide, and in ruling that he failed to generate a question of fact as to his culpable state of mind at the time of the murder. In addition, defendant raises several questions concerning his representation. He argues that he was deprived of the effective assistance of counsel throughout the proceedings and that he was deprived of the right of self-representation. Finally, he argues that he was deprived of his right to be present during a portion of the trial. Finding no error, we affirm the judgment.

Defendant was indicted for the "intentional or knowing" murder of Connie Barrett, his estranged wife. The evidence presented at trial established that after a period of marital difficulty, defendant followed his wife to her place of employment in Waterville and shot her once as she got out of the car, wounding her superficially. When his wife fell down, defendant walked over to her and shot her in the head, killing her. Defendant admitted shooting and killing his wife but denied that he possessed the culpable state of mind necessary to commit murder. The jury found defendant guilty and he now appeals.

■ Defendant first argues that the Superior Court erroneously denied his motion for the appointment at state expense of a mental health expert in affective disorders. His argument lacks merit. When an indigent defendant's "sanity is likely to be a significant factor in his defense," the defendant is entitled to a court-appointed psychological expert. *Ake v. Oklahoma,* 470 U.S. 68, 82–83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985). The defendant, however, does not have a constitutional right to an expert of his own choosing. *Ake,* 470 U.S. at 83, 105 S.Ct. at 1096. In the case at bar, defendant was examined by four different psychiatrists or psychologists, two appointed by the court to conduct a mental examination, and two private psychologists selected by defendant for which the court provided funds. None of the experts found any evidence that defendant suffered from an affective disorder. In these circumstances, defendant received the mental health "services essential or necessary to an adequate defense" and he failed to show that he was "substantially prejudiced by the action of the trial court." *State v. Anaya,* 456 A.2d 1255, 1263 (Me.1983) (to successfully appeal trial court's denial of funds for expert, indigent defendant must show that he was substantially prejudiced).

■ Defendant next argues that the trial court abused its discretion in finding that he was competent to stand trial after he allegedly tried to commit suicide during the course of trial. Prior to trial, the court ordered a mental examination pursuant to 15 M.R.S.A. § 101–B (Pamph.1989). The resulting evaluation concluded that defendant was competent to stand trial. On the morning of the third day of trial, defendant cut his left forearm with a razor about 10 minutes before the deputies were scheduled to bring him to the courtroom. Defendant's wounds were stitched, and defendant was released from the hospital. On

the way to the courtroom, defendant broke away from the deputies and put his head through a window. As a result, he received a one-inch cut on the right side of his forehead and a small cut on the left side. The presiding justice suggested that defendant should be examined for competency before resuming trial and defense counsel agreed. The two experts who had performed the original mental examination happened to be present in court, and they examined defendant. These experts opined that defendant was competent. We reject defendant's argument that his attempts at self-injury necessarily create a genuine doubt concerning his competence to continue to stand trial.

> Competence to stand trial denotes that the accused is capable of understanding the nature of the charges and object of the proceedings against him, of comprehending his own condition in reference thereto, and, in cooperation with his counsel, of conducting his defense in a rational manner.

*State v. Hewett*, 538 A.2d 268, 269 (Me. 1988). The necessity for inquiry into the competence of a defendant to stand trial is a determination within the discretion of the trial justice. *State v. Perkins*, 518 A.2d 715, 716 at n. 1 (Me.1986). Furthermore, in making this determination the trial justice is free to consider his personal observations of defendant's conduct and demeanor. *State v. Lanciani*, 560 A.2d 1080, 1082 (Me.1989). In the case at bar, both defendant's behavior before and during trial, as well as the psychological evidence, fail to demonstrate that the trial justice erred in concluding that defendant's self-inflicted and superficial wounds were merely "intentional and deliberate" attempts "to delay or otherwise ... interfere with the normal progress of the trial" and did not raise "genuine doubt" as to defendant's competence warranting further inquiry.

■ Defendant next argues that he produced sufficient evidence to generate a factual issue whether he had an abnormal condition of the mind at the time of the shooting that could have caused the jury to entertain a reasonable doubt as to his culpability. At trial defendant proffered the testimony of eight relatives and friends. They testified that as a result of his deteriorating marriage he was depressed during the summer and fall before the shooting. The trial justice excluded this testimony on the ground that the evidence did not support the conclusion that "the depression that the defendant apparently had at the time [of the crime] was ... such that it would rise to the level of an abnormal condition of mind and might create a defense" under 17–A M.R.S.A. § 38 (1983). Having excluded the evidence, the trial justice declined to instruct the jury with respect to section 38. Defendant contends that the trial justice's ruling was erroneous because the excluded evidence generated a factual question regarding defendant's culpable state of mind. We find that the trial court committed no error.

The criminal code provides that: "Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind." 17–A M.R.S.A. § 38. We have previously held that the testimony of laypersons "cannot be deemed evidence legally sufficient to raise a reasonable doubt that on the particular occasion at issue defendant had acted 'intentionally or knowingly'" without evidence "tending to show some impairment of defendant's cognitional or volitional faculties." *State v. Sommer*, 409 A.2d 666, 669 (Me.1979). Defendant's friends and family testified that during the period before the shooting defendant exhibited the usual symptoms of depression, including lack of appetite, listlessness and lack of motivation, unusual quietness and general sadness. One witness, Jeff Bridges, testified that in 1982, five years before the shooting, defendant cut his wrist when his wife tried to break up with him. None of the testimony, however, suggests that the depression experienced by defendant shortly before the shooting affected defendant's cognitional or volitional faculties. Accordingly, the testimony "was properly excluded, as not tending to raise a reasonable doubt as to a culpable mental state," *State v. Murphy*, 496 A.2d 623, 632 (Me.1985), and no factual issue was gener-

ated with respect to the application of section 38.

■ Defendant presents a number of questions on appeal that arise out of the complicated history of his representation. Counsel was originally appointed to represent defendant when he was arraigned in November of 1987. After defendant escaped from custody, his first defense counsel was permitted to withdraw for reasons of a conflict of interest. When defendant was apprehended in April of 1988, new defense counsel was appointed. Thereafter, in October of 1988, defendant filed two motions on his own asking for new counsel and alleging that his counsel was inadequately representing him and was not communicating with him. The Superior Court (*Brody, C.J.*) denied the motions and found that defense counsel was "very competent" and "proceeding appropriately." Defendant requested reconsideration of the court's ruling and that request was denied. Ultimately defense counsel requested reconsideration. Although the Superior Court found no merit in defendant's assertions that his counsel had been ineffective, it appointed new counsel because defendant refused to cooperate with his present counsel. Three months later, defendant's third counsel requested leave to withdraw on the ground that defendant desired a different counsel and refused to cooperate with him. The Superior Court denied the motion finding no suggestion of incompetence on the part of defense counsel and concluding that defendant's conduct was a delaying tactic. One month later defendant again filed a motion to have new counsel appointed. The Superior Court (*Delahanty, J.*) denied defendant's request for appointment of new counsel, finding that the only obstacle to representation was defendant's own failure to communicate with counsel and his desire to delay trial. When he was unsuccessful in obtaining a new counsel, defendant elected to represent himself. After inquiry, the court accepted defendant's decision and required defendant's appointed counsel to serve as standby counsel.

Defendant contends that he was unconstitutionally deprived of assistance of counsel by the trial court's refusal to grant his motion to appoint new counsel to replace his third court-appointed counsel, and by the trial court's implicit requirement that he choose between appearing *pro se* or having his court-appointed counsel represent him. Defendant argues that his ultimate decision to proceed *pro se* was not voluntary. Defendant's contentions are without merit.

■ The sixth amendment right to counsel does not confer upon a defendant an absolute right to counsel of defendant's choice. *State v. Ayers*, 464 A.2d 963, 966 (Me.1983). Nor does it "guarantee[ ] a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). Rather "the Constitution guarantees criminal defendants only a fair trial and a competent attorney as necessary to insure an adequate defense." *Ayers*, 464 A.2d at 967 n. 1 (construing the Supreme Court's use of the phrase "meaningful relationship" in *Morris*). Accordingly,

> [a] court need not tolerate unwarranted delays, and if in the sound discretion of the court the attempted exercise of choice is deemed dilatory or otherwise subversive of orderly criminal process, the court may compel a defendant to go to trial even if he is not entirely satisfied with his designated attorney.

*State v. Winchenbach*, 501 A.2d 1282, 1285 (Me.1985) (quoting *Ayers*, 464 A.2d at 966). In the context of the present case, the trial justice was well within his discretion in determining that defendant's motion for appointment of new counsel was merely an attempt to delay his trial.

■ The record also reveals that the trial justice did not err in finding that defendant voluntarily waived his right to counsel. "An accused is entitled to proceed without counsel so long as he is made aware of the dangers of self-representation, and the record reflects that 'he knows what he is doing and his choice is made with eyes open.'" *State v. Walls*, 501 A.2d

803, 805 (Me.1985) (quoting *Faretta v. California*, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)) (citations omitted). The validity of a waiver is evaluated in the context of the case at bar and is reviewed "in the light most favorable to the court's ruling." *State v. Morrison*, 567 A.2d 1350, 1351 (Me.1990) (quoting *Walls*, 501 A.2d at 805).

The trial justice thoroughly explained the dangers of proceeding *pro se* to defendant before he permitted defendant to exercise his right of self-representation. The trial justice informed defendant appropriately that he had a right to an attorney, that his decision to proceed *pro se* must be voluntary, and that it would have definite consequences. The choice presented to defendant between self-representation and representation by counsel was not, contrary to his contention, an act of coercion negating the voluntariness of his waiver of counsel.

Defendant next contends that even if we find that he knowingly and intelligently waived his right to counsel, defendant's right of self-representation was violated when counsel took over the defense on the third day of trial. This argument is unpersuasive as well. The record reflects that defendant's court-appointed standby counsel actively participated as counsel during the first two days of trial by examining several witnesses. Defendant never objected and in fact the record suggests that defendant indicated to counsel that he wanted counsel to take over the bulk of his defense. After defendant injured himself the third morning of trial, the presiding justice inquired whether defendant felt he could continue to represent himself. When defendant did not respond, the justice appointed standby counsel to conduct the remainder of the defense.

■■■ Unlike the right to counsel, a defendant must assert his right of self-representation unequivocally before it will attach. *State v. Stinson*, 424 A.2d 327, 332 (Me.1981); *see also, Walls*, 501 A.2d at 806.

After attachment occurs, "[t]he appointment of standby counsel [alone] . . . does not infringe a defendant's right of self-representation." *State v. Bettney*, 529 A.2d 1356 (Me.1987). In fact, reliance upon attorney assistance in conducting certain aspects of the trial undermines defendant's claim that counsel interfered unacceptably. *Id.* at 1357.

> Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.

*McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). On the facts of this case, the Superior Court committed no error in finding that defendant waived his right to self-representation.

■■■ Defendant's remaining arguments concerning ineffective assistance of counsel are not cognizable on direct appeal. We have repeatedly held that the issue of inadequate representation "normally cannot be raised on direct appeal but, rather, must await post-conviction proceedings." *State v. Gilcott*, 420 A.2d 1238, 1240 (Me.1980); *State v. Call*, 322 A.2d 64, 66 (Me.1974).[1] Accordingly, the only exception to this rule is "where the record clearly establishes representational difficulties that are 'plainly beyond explanation or justification.'" *State v. Robinson*, 561 A.2d 492, 495 (Me. 1989) (citations omitted). The record in this case fails to reveal any such difficulties.

■■■ Defendant also contends that the trial court erred in permitting his absence from the courtroom on the third and part of the fourth day of trial. Following the incident on the third morning of trial, defendant asked if he could leave the courtroom. After appropriate inquiry, the presiding justice permitted defendant to ob-

---

1. *State v. Harnish*, 560 A.2d 5, 10 (Me.1989), in which the Law Court reviewed the claim of ineffective assistance of counsel directly, was an exception because a full evidentiary hearing was held pursuant to a motion for new trial under M.R.Crim.P. 33. The pretrial hearings in this case did not provide a full evidentiary hearing because defense counsel still represented defendant at that point and, therefore, was not able to testify fully. M.R.Evid. 502(d)(3).

serve the trial from an adjacent conference room. The room was equipped with a television monitor so that he could see and hear what was taking place in the courtroom and also had a telephone hookup that permitted him to communicate with counsel in the courtroom. The trial justice stressed to defense counsel that he wanted to be certain that defendant's absence was voluntary and that he wanted defendant to understand that he had "the right to change his mind at any time." The trial justice also directly informed defendant that he had an "absolute right" to be in the courtroom, that his absence was solely his choice and that he was free to come back at any time. In response, defendant stated that he would watch from the conference room. The trial justice told defense counsel that if either he or defendant needed to communicate other than by telephone, he would permit a recess. The trial justice also instructed the jury that defendant's absence from the courtroom was "voluntary on his part with the approval of the court ... [and that they] should not draw any inference for or against the defendant or ... the State for this reason." He further explained that defendant was watching the proceedings. Defendant returned to the courtroom in the afternoon of the fourth day.

Although defendant acknowledges that his constitutional right to be present during trial may be waived, he argues that under the then M.R.Crim.P. 43 a defendant in a murder case may not waive the right, even voluntarily. Defendant misconstrues the purpose of the rule. Rule 43 states in pertinent part that "[i]n prosecutions for any offenses *except murder*, defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial...." (emphasis added).[2] While one of the purposes of Rule 43 is to ensure that a defendant is present to confront the evidence against him, its underlying policy is to prevent a defendant from interfering with the progress of his trial by voluntarily absenting himself. *State v. Staples,* 354 A.2d 771, 775–76 (Me.1976). Assuming, without deciding, that the logistical arrangements made in this case constitute an "absence" under Rule 43, we hold that the rule does not negate defendant's right to knowingly and intelligently waive his constitutional right to be present at trial.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** At the time of trial, M.R.Crim.P. 43 provided: The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury, and the return of the verdict, and at the imposition of the sentence, except as otherwise provided by these rules. *In prosecutions for any offense except murder, the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict and disposition of sentence.* A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for less than one year, or both, the court may permit arraignment, plea, trial and imposition of sentence of represented defendant in the defendant's absence. (Emphasis added).

Rule 43 was amended, effective February 15, 1990. The amendment removed the present exception for the crime of murder. The Advisory Committee notes state that "notwithstanding the fact that under certain circumstances a life sentence is potentially available as an alternative sentence for murder, that fact alone should not foreclose to a trial court the discretion to continue the prosecution if the defendant in a murder case voluntarily absents himself or herself from the trial."