MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 58
Docket:        Aro-12-411
Submitted
 On Briefs:    May 30, 2013
Decided:       June 18, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, GORMAN, and JABAR, JJ.

## IN RE J.R. Jr.

JABAR, J.

[¶1]    The parents of J.R. Jr. appeal the decision of the District Court (Houlton, *O'Mara, J.*) terminating their parental rights.  The mother challenges the court's finding regarding the best interest of the child.  The father argues that the court erred in finding that he was unfit and abused its discretion in denying his motion to recuse and his attorney's motion to withdraw.  Finding no error or abuse of discretion, we affirm.

## I.  BACKGROUND

[¶2]    J.R. Jr. was born on April 4, 2011, and entered the custody of the Department of Health and Human Services the following day, after the court granted a preliminary child protection order.  J.R. Jr.'s eleven-month-old sister and the mother's two children from a previous relationship, ages eight and twelve, had

2

been in the Department's custody since May 26, 2010.[1] The parents have been engaged in an intermittent, chaotic, dysfunctional, and violent relationship. Both parents struggle with substance abuse, and, at the time of his birth, J.R. Jr. displayed symptoms of drug withdrawals. J.R. Jr. and his sister were placed with the father's sister.

[¶3] Both parents agreed to reunification plans requiring them to engage in substance abuse and mental health treatment, submit to random drug tests, and correct their chaotic lifestyle. In addition, the father was required to engage in anger management and a batterers' intervention program, and the mother was required to attend individual counseling to address domestic violence, her mental health issues, and the emotional needs of her children. A jeopardy hearing was held on June 22, 2011, at which the mother agreed to an order finding that J.R. Jr. was in circumstances of jeopardy while in her care due to the threat of neglect and emotional maltreatment. The father did not appear at the hearing, and the court issued a jeopardy order as to him in his absence.

[¶4] After the jeopardy orders were issued, the mother failed drug screenings, the father failed to appear at a drug screening, and, while in custody at

---

[1] The parents agreed to a voluntary termination of their parental rights as to J.R. Jr.'s older sister in December 2011. The mother's parental rights to her other children were terminated after a contested hearing in June 2012.

the Aroostook County Jail, the father was found to be in possession of pills for which he did not have a prescription.

[¶5] Throughout the proceedings, the mother continued her dysfunctional relationship with the father. She failed to recognize how her actions affected J.R. Jr. and his need for permanency and failed to consistently participate in services required by the reunification plan. She attended self-referred substance-abuse counseling but left an intake interview with a Department-approved substance and mental health counselor after only twenty minutes.

[¶6] The father was diagnosed with intermittent explosive disorder, antisocial personality disorder, and conduct disorder, and, after confrontations with staff members, he was terminated from a court-ordered batterers' intervention program. While the case was pending, the father was convicted of multiple crimes and incarcerated on three separate occasions for periods ranging from three days to over four months.[2] During several supervised visits with his children, the father would engage in abusive and intimidating behavior toward Department caseworkers, prompting the Department to post two supervisors for each visit.

---

[2] The four-month period of incarceration stemmed from an incident in which the father broke down the door to the mother's apartment after the mother had locked him out.

4

[¶7]  Although the father made some progress with regard to his mental health and anger issues, he refused to accept responsibility for conduct that resulted in J.R. Jr. being placed in foster care and blamed others for his problems.

[¶8]  The court found that the father did not have housing, but lives in his van or with friends; the father admitted that he is not presently a suitable placement for J.R. Jr. because he would need to do "a lot more" to be a satisfactory parent.

[¶9]  On April 10, 2012, the Department filed a petition to terminate parental rights alleging that both parents (1) were unwilling or unable to protect J.R. Jr. from jeopardy and those circumstances were unlikely to change within a time reasonably calculated to meet his needs; (2) were unwilling or unable to take responsibility for J.R. Jr. within a time reasonably calculated to meet his needs; and (3) failed to make a good faith effort to reunify with the child.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv) (2012).

[¶10]  On June 14, June 15, and July 9, 2012, the court held a hearing on the petition to terminate parental rights.  On June 14, after the parents arrived forty minutes late, the father moved for the trial judge to recuse, arguing that the judge was biased given the number of times the father had appeared before him. Immediately after the court denied the motion to recuse, the father left the courtroom, later claiming that he was sick and required medical attention.  The

mother indicated that she would not be able to go forward with the hearing on that day. The court continued the hearing until the following morning.

[¶11] After a full day of testimony on June 15, the matter was continued until July 9. On July 3, the attorney for the father moved to withdraw, arguing that the attorney-client relationship was irretrievably broken after the father filed a bar complaint against the attorney. Prior to resuming the hearing on July 9, the court asked the father about the basis for the motion. The father indicated that he filed the bar complaint because he felt that the attorney was being "defiant" and was not representing his best interests. Determining that the bar complaint was meritless and employed for delay, the court denied the motion to withdraw.

[¶12] The court concluded the hearing on July 9. The court found that neither parent had ameliorated the concerns that initiated these proceedings nor had they directed the court to a date by which they might be able to address those concerns. Furthermore, the court found that both parents are unable or unwilling to protect the child from jeopardy or take responsibility for the child within a time reasonably calculated to meet the child's needs, and both parents failed to make a good faith effort to rehabilitate and reunify with the child. The parents spent the majority of their efforts—both in services and at the hearing on the petition to terminate—arguing that the father's sister was not a suitable placement for J.R. Jr.

6

[¶13]　With regard to the best interest of the child, the court found that J.R. Jr. had been in the care of the father's sister for his entire life and is in need of permanency.  The record before the court demonstrated that with his aunt, the child was happy and healthy, the Department had no plan to relocate him, and the foster parents were willing to adopt him.  Thus, the court found that remaining with the foster family was in the best interest of the child.

[¶14]　The court entered an order terminating the parental rights of both parents on July 13, 2012.  The parents filed a motion for additional findings of fact, which the court granted in part on July 31.  Both parents timely appealed.

## II.  DISCUSSION

[¶15]　Although the father challenges the court's finding of unfitness, there is ample evidence in the record supporting all three bases of unfitness.  *See In re Marcus S.*, 2007 ME 24, ¶ 6, 916 A.2d 225 ("Evidence is sufficient to affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." (quotation marks omitted)).  Furthermore, the father testified at the termination hearing that he is not presently a suitable placement for J.R. Jr.  *See In re Higera N.*, 2010 ME 77, ¶¶ 29-32, 2 A.3d 265; *In re Doris G.*, 2006 ME 142, ¶¶ 16-17, 912 A.2d 572 (holding that the Department's failure to comply with the

rehabilitation and reunification plan does not "preclude findings of parental unfitness"). Similarly, the mother's challenge to the court's findings regarding the best interest of the child is without merit because the court's findings are supported by clear and convincing evidence in the record and the court did not abuse its discretion in making that determination. *See In re Jacob B.*, 2008 ME 168, ¶¶ 14, 17-19, 959 A.2d 734 (noting that "[m]any factors can combine to support a best interest determination"); *In re Marcus S.*, 2007 ME 24, ¶ 6, 916 A.2d 225. Therefore, we decline to discuss further the parents' contentions regarding the court's factual findings. We will, however, address the court's denial of (A) the father's motion seeking the recusal of the trial judge and (B) the father's attorney's motion to withdraw.

A.    Motion to Recuse

[¶16]   We have previously recognized, and again highlight here, "the sensitivity with which a motion for recusal must be treated by a judge." *In re Michael M.*, 2000 ME 204, ¶ 14, 761 A.2d 865. We review such decisions for an abuse of discretion. *Id.* ¶ 9.

[¶17]   "A judge need not disqualify if the judge can act with complete impartiality and no reasonable grounds exist to question the judge's ability to act in such a manner." *DeCambra v. Carson*, 2008 ME 127, ¶ 8, 953 A.2d 1163 (quotation marks omitted). "Generally, knowledge gained in a prior proceeding is

8

not a sufficient ground to recuse a judge in a subsequent matter." *State v. Rameau*, 685 A.2d 761, 763 (Me. 1996). Judges must exercise their discretion by balancing steadfast compliance with Canon 3(E)(2) of the Maine Code of Judicial Conduct with the demands of a burdened court system that operates in rural areas, often requiring judges to preside over the same litigants in multiple contexts.[3] *C.f. In re Michael M.*, 2000 ME 204, ¶¶ 14-15, 761 A.2d 865.

[¶18] The father argued that it would be impossible for the judge to be impartial because the father had been before the judge as a litigant on prior occasions. Although the judge indicated that he had presided over matters in which the father had been involved, including criminal and civil cases, he determined that nothing would prevent him from "rendering a fair judgment." *See Rameau*, 685 A.2d at 763. This was not an abuse of discretion. *See id.* at 762. As we stated in *In re Michael M.*,

> Judges must ascertain whether they, in fact, come within any of the categories requiring disqualification in the Code of Judicial Conduct and whether there is any other basis upon which their impartiality may *reasonably* be questioned. At the same time judges must not allow litigants to utilize the process of a recusal motion to delay or thwart

---

[3] Canon 3(E)(2)(a) of the Maine Code of Judicial Conduct provides:

A judge may disqualify himself or herself on the judge's own initiative without stating the grounds of disqualification, and shall disqualify himself or herself on a motion for recusal made by a party, in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

> the judicial proceedings where there is no reasonable basis for the motion and it is obvious on its face that it was intended to halt or delay the litigation. A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.

2000 ME 204, ¶ 14, 761 A.2d 865 (citation and quotation marks omitted). Here, the court listened to the objections set forth by the father,[4] articulated the reasons why he, as the trial judge, did not feel it necessary to recuse himself, and appropriately denied the motion to recuse. *See State v. Murphy*, 2010 ME 140, ¶¶ 17-19, 10 A.3d 697 ("Despite [the defendant's] provocations and claims that the judge should have recused because of [the defendant's] filing actions against the judge and criticism of the judge, the court appropriately maintained the proceedings to their completion. Recusal is discretionary and, as we have observed, judges should avoid recusal in situations when parties engage in actions seeking to cause recusal.").

B. Motion to Withdraw

[¶19] Maine Rule of Civil Procedure 88 dictates that if a party in a civil proceeding is entitled to court appointed counsel, any subsequent motion to withdraw is governed by Maine Rule of Criminal Procedure 44B. Pursuant to Rule 44B, unless the withdrawing counsel provides his or her client with notices of withdrawal and appearance of appropriate substitute counsel, "counsel may

---

[4] After the motion to recuse was denied, the father abruptly left the courtroom and later told the court that he was going to file a bar complaint against the judge because the motion to recuse was denied.

withdraw from the case only by leave of court." M.R. Crim. P. 44B. We review for an abuse of discretion a trial court's decision regarding a motion for withdrawal of counsel. *State v. Dunbar*, 2008 ME 182, ¶ 5, 960 A.2d 1173. "In evaluating whether the trial court's denial of a request for leave to withdraw constituted an abuse of discretion, we must consider the adequacy of the court's inquiry into the defendant's complaint." *State v. Goodine*, 587 A.2d 228, 230 (Me. 1991). "A court need not tolerate unwarranted delays, and, if . . . the [defendant's] attempted exercise of choice [of counsel] is deemed dilatory or otherwise subversive of orderly . . . process, the court may compel a defendant to go to trial even if he is not entirely satisfied with his designated attorney." *See State v. Ayers*, 464 A.2d 963, 966 (Me. 1983).

[¶20] Here, after the father filed a bar grievance against the attorney, the attorney moved to withdraw in the middle of trial. The court engaged in a thorough inquiry into the bases for the motion to withdraw and the father's bar grievance, ultimately determining that the bar grievance was without merit and filed for the purpose of delaying the hearing. The court determined that the attorney's representation had been zealous and appropriate. Therefore, given the adequacy of the inquiry, we hold that the court did not abuse its discretion in denying the motion to withdraw. *See id.*

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Matthew A. Hunter, Esq., Presque Isle, for appellant mother

Pamela S. Holmes, Esq., Holmes Legal Group, LLC, Wells, for appellant father

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Houlton District Court docket number PC-2011-1
FOR CLERK REFERENCE ONLY