MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 108
Docket:        Cum-13-521
Submitted
 On Briefs:    July 1, 2014
Decided:       August 19, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, and GORMAN, JJ.

## TIMOTHY G. DALTON

v.

## SARAH H. DALTON

MEAD, J.

[¶1]    Sarah Dalton appeals from the judgment of the District Court (Portland, *Moskowitz, J.*) denying or declaring moot her various post-judgment motions.    Sarah's appeal challenges the trial court's evidentiary rulings at the hearing and its denial of her motion for further findings of fact and conclusions of law.    She also argues that the guardian ad litem (GAL) should not be protected by quasi-judicial immunity and that the trial judge should have, sua sponte, recused himself from the case.    We affirm the judgment.

## I.  BACKGROUND

[¶2]    Timothy and Sarah Dalton were married in 2002 and divorced on May 7, 2013.    They have three children together: a daughter, age 10, and twins, age 7.

2

[¶3] The trial court, after a two-day hearing, granted the couple a divorce on grounds of irreconcilable differences. In its order, the court found that Sarah had used unreasonable force that overstepped the law in her physical discipline of the children, used other physical discipline that violated an interim court order, used emotionally abusive techniques to control the children, failed to appropriately change her behavior or to obtain help for her mental health issues, and failed to visit the eldest child at a visitation center. Because Sarah poses a safety concern to her own children and showed no evidence that she understood the effect of her violence on the children, the divorce judgment awarded parental rights and responsibilities and primary residence of the children to Timothy. Sarah's rights of contact were limited to three supervised visits per week and daily phone calls. The judgment also expressly provided Sarah with an opportunity to make progress with the issues that resulted in the limited contact provisions and to gain more extensive rights of contact.

[¶4] Instead of working within the constructs of the court's order to expand her rights of contact with her children, in the months following the divorce judgment, Sarah sought to collaterally attack the judgment by filing numerous post-judgment motions with the stated purpose of modifying the visitation and supervision arrangement in the judgment. The post-judgment motions filed by Sarah included the following:

- a motion for an expedited order to approve a parenting coach to work with her;

- a motion to cap GAL fees and delineate duties and responsibilities;

- a motion for an expedited order for unsupervised visitation, good faith approvals/parameters of supervision, one-on-one time, and an expanded list of supervisors;

- a motion to modify order and expand the role of the parenting coach;

- a motion to bring the GAL's misconduct to the attention of the court; and

- a motion for bifurcated hearing on child support due to the plaintiff's filing of a fraudulent DHHS claim and a further modification to child support order.

[¶5]　　The court held a hearing on the post-judgment motions on October 1, 2013. At the hearing, Sarah offered evidence from five witnesses, including two witnesses that she sought to qualify as experts. Sarah's attorney's manner of questioning and her attempt to introduce unqualified opinion testimony drew many objections from opposing counsel. The objections were made primarily on four grounds: leading questions, hearsay, relevance, and lack of qualifications to offer an expert opinion. The vast majority of the objections were sustained by the court.

[¶6] The court announced its decision from the bench at the conclusion of the hearing and, on the same day, issued a written order on the post-judgment

4

motions. It lauded Sarah's hard work and found that she had made progress with the help of her parenting coach, but ultimately concluded that the circumstances had not changed significantly in the four months since the May 7, 2013, divorce judgment. It denied or declared moot all of Sarah's motions.

[¶7] On October 8, 2013, Sarah filed a motion for further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a) and (b), which was denied. The motion did not specify any requested findings or conclusions. This appeal followed.

## II. DISCUSSION

[¶8] Sarah makes four arguments, two of which she raises for the first time on appeal. She argues that (A) the GAL should not be protected by quasi-judicial immunity; (B) the trial court abused its discretion in refusing to admit evidence she offered to impeach the GAL; (C) the trial court abused its discretion in denying her motion for additional findings of fact and conclusions of law; and (D) the trial judge should have, sua sponte, recused himself from this matter, or, alternatively, we should recuse him from any proceedings going forward.

A.    Judicial Immunity

[¶9]   Judicial immunity protects a GAL from civil liability for acts performed within the scope of a GAL's official duties in the event that he or she is personally sued. *See* M.R.G.A.L. III ("Pursuant to [19-A M.R.S. § 1507(6)

(2013)], and to these Rules, a Guardian is entitled to quasi-judicial immunity from liability for actions undertaken pursuant to their appointments, these Rules or the Standards of Practice for Guardians ad Litem in Maine Courts."); *Richards v. Bruce*, 1997 ME 61, ¶ 4 n.3, 691 A.2d 1223.

[¶10] In this divorce proceeding, Sarah is not seeking to recover—and could not seek to recover—monetary damages for harm caused by the GAL in performing her official duties. The question of whether quasi-judicial immunity applies is, therefore, completely hypothetical. We will not entertain this nonjusticiable issue simply because Sarah might someday decide to pursue a tort claim against the GAL. *See Connors v. Int'l Harvester Credit Corp.*, 447 A.2d 822, 824 (Me. 1982) ("Justiciability requires that there be a real and substantial controversy, admitting of specific relief through a judgment of conclusive character as distinguished from a judgment merely advising what the law would be if, for example, this Plaintiff should someday decide to assert a right . . . .").

B.    Evidentiary Rulings

[¶11]    The hearing before the trial court was, despite the court's commendable judicial restraint and patience, an extremely contentious affair—mainly because of Sarah's attorney's disregard for the rules of evidence and her failure to respect the court's rulings. On appeal, Sarah challenges the court's

6

evidentiary rulings regarding leading questions, hearsay, relevance, and expert opinions.

### 1. Leading Questions

[¶12] "Leading questions should not be used on the direct examination of a witness . . . ." M.R. Evid. 611(c). A court's decision to control the mode of interrogation is reviewed for abuse of discretion. *State v. Rickett*, 2009 ME 22, ¶ 18, 967 A.2d 671. During the examination of her own witnesses, Sarah's attorney repeatedly asked leading questions. These questions were objected to and the objections were almost exclusively sustained. At one point, the court, in response to an objection stated, "It is leading. It's a series of leading questions so far. Perhaps you could refrain, Ms. Maloney, from asking leading questions." Despite this warning from the court, the attorney continued to ask leading questions—signaling witnesses to respond with a yes or no answer by ending many questions with the word "correct." The court's rulings in response to Sarah's attorney's blatant disregard for the rules of evidence did not constitute, in any manner, abuses of discretion.

### 2. Hearsay

[¶13] Sarah's attorney attempted to offer hearsay testimony of statements that the children had made to witnesses, and in the form of Department of Health and Human Services (DHHS) records. Both the records and the testimony drew

objections on hearsay grounds that were appropriately sustained. In response to the court's ruling on the DHHS records, Sarah's attorney attempted to authenticate the records under M.R. Evid. 803(6), but was unable to do so.

[¶14] The children's statements—for example, a statement that the eldest child made in response to a timeout—were clearly out-of-court statements of another offered for the truth of the matter asserted, *see* M.R. Evid. 802, and Sarah's attorney did not argue for their admission under an exception to Rule 802. The DHHS records were potentially admissible pursuant to M.R. Evid. 803(6). The attorney, however, did not properly authenticate the records under that rule and they were excluded.

[¶15] The court did not abuse its discretion in excluding either the children's statements or the DHHS records, *see State v. Vaughan*, 2009 ME 63, ¶ 5, 974 A.2d 930, or clearly err in determining that the proper foundational requirements for admissibility pursuant to M.R. Evid. 803(6) had not been met. *See Beneficial Me., Inc. v. Carter*, 2011 ME 77, ¶¶ 9-10, 25 A.3d 96.

3. Relevance

[¶16] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401; *State v. Mooney*, 2012 ME 69, ¶ 12, 43 A.3d 972.

[¶17]   At the hearing, the court excluded, on relevance grounds, numerous statements offered by Sarah that pertained to events that occurred before the May 7, 2013, divorce judgment.  Because the excluded testimony was evidence of pre-judgment events and the relief requested required the court to consider only the post-judgment circumstances surrounding Sarah's relationship with the children, it was not clear error for the court to exclude the testimony on relevance grounds.  *See State v. Bickart,* 2009 ME 7, ¶ 30, 963 A.2d 183 ("When the issue is preserved, we review the trial court's determination of relevance under Rule 401 for clear error.").

4.      Expert Opinions

[¶18]   Sarah attempted to have two witnesses, a parenting coach and a nurse, opine on whether Sarah's behavior triggered post-traumatic stress disorder in the eldest child.  This testimony was excluded because the court found that Sarah's attorney had not presented sufficient foundational evidence to show that either witness was qualified to give the opinion that she tried to elicit.

[¶19]   The foundational evidence that Sarah presented to qualify both witnesses as experts was inadequate.  Neither witness demonstrated knowledge of PTSD triggers or an ability to diagnose the condition.  *See Tolliver v. Dep't. of Transp.,* 2008 ME 83, ¶ 29, 948 A.2d 1223.  Therefore, it was not an abuse of

discretion to exclude the proffered testimony. *See State v. Ericson*, 2011 ME 28, ¶¶ 12-13, 13 A.3d 777.

C.  Further Findings and Conclusions

[¶20]  M.R. Civ. P. 52(a) allows a party to, within five days after the party receives a notice of decision that contains no findings or conclusions, request findings of fact and conclusions of law from the trial court. Rule 52(a)'s language is mandatory—a trial court receiving such a motion "shall . . . find the facts specially and state separately its conclusion of law thereon."

[¶21]  Rule 52(b) permits parties to request additional or amended findings or conclusions from a trial court that has included findings of fact and conclusions of law in its opinion or order, whether issued orally or in written form. *Bell v. Bell*, 1997 ME 154, ¶ 4, 697 A.2d 835. A Rule 52(b) motion may only be made within ten days after the party has received notice of the court's findings, and a court receiving a Rule 52(b) motion is not required to make additional findings or conclusions. M.R. Civ. P. 52(b); *Bell*, 1997 ME 154, ¶ 4, 697 A.2d 835. Any motion made pursuant to Rule 52 must "state with specificity the findings of fact and conclusions of law requested." *Bell*, 1997 ME 154, ¶ 4, 697 A.2d 835. We review the trial court's denial of a motion for findings of fact for abuse of discretion. *Peters v. Peters*, 1997 ME 134, ¶ 11, 697 A.2d 1254.

10

[¶22]  In this case, the court made extensive findings on the record at the conclusion of the hearing.  For that reason, Sarah's cite to Rule 52(a) was not appropriate.  Moreover, Sarah's Rule 52 motion only requested that the court "make further findings of fact and conclusions of law . . . ."  She did not request with specificity the findings and conclusions requested, nor did she submit proposed findings for the court's consideration.  *See Bell*, 1997 ME 154, ¶ 4, 697 A.2d 835.  For these reasons, the court did not abuse its discretion in denying Sarah's motion.

D.   Recusal

[¶23]  "Pursuant to the Maine Code of Judicial Conduct, a judge must recuse himself on motion for recusal made by any party in which his impartially might reasonably be questioned or in which the judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding."  *Charette v. Charette*, 2013 ME 4, ¶ 21, 60 A.3d 1264 (quotation marks omitted).  Despite the litany of motions that Sarah filed in the trial court, she raises the issue of recusal for the first time on appeal.  Therefore, we review the trial judge's decision not to recuse himself sua sponte for obvious error.  *See id.* ¶ 22.

[¶24]  It is not clear whether Sarah is asking us to remand the case for a new hearing due to the trial judge's alleged bias, or to conclude that the judge must

recuse himself from any future proceedings in this matter. Regardless, she does not present any evidence of bias or prejudice; in her brief she asserts only that

> when reviewing the transcript in its entirety and juxtaposing it with the court's order, no objective and reasonable person could view the conduct of the trial judge as either fair or impartial. Throughout the trial, the judge repeatedly demonstrated his personal bias and prejudice against both Sarah and her attorney.

[¶25]  "[T]hat a court has decided disputed issues of law and fact against a party is not, without more, evidence of impartiality." *Estate of Lipin*, 2008 ME 16, ¶ 6, 939 A.2d 107.  And without a firm foundation upon which accusations of personal bias, prejudice, or impropriety can stand, baseless charges of misconduct are patently inappropriate.

[¶26]  In this case, the court displayed commendable patience and restraint in the face of an attorney who lacked either a fundamental understanding of, or a respect for, the rules of evidence and who displayed what appears to be general disrespect for the court and for her opposing counsel.  To unjustifiably accuse the court of impropriety is, at no time, an acceptable or productive litigation tactic. There is no obvious error.

The entry is:

Judgment affirmed.

12

**On the briefs:**

Beth Alison Maloney, Esq., Kennebunkport, for appellant Sarah H. Dalton

Susan S. Bixby, Esq., MittelAsen, LLC, Portland, for appellee Timothy G. Dalton

Portland District Court docket number FM-2012-522
FOR CLERK REFERENCE ONLY