MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 165
Docket:      Fra-16-559
Submitted
  On Briefs:  June 29, 2017
Decided:     July 25, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

CAROL ANN MURPHY

PER CURIAM

[¶1]  Carol Ann Murphy acquires animals and then is unable or unwilling to properly care for them.  She has been twice convicted of cruelty to animals.  She has been ordered never to possess animals again.  Notwithstanding that order, when released from the four-year prison sentence imposed after her second conviction for cruelty to animals and other crimes, *see State v. Murphy*, 2010 ME 140, 10 A.3d 697, she returned to acquiring a variety of animals, including dogs, cats, chinchillas, rabbits, and a potbellied pig.  Following a jury verdict finding her in contempt of court, *see* 4 M.R.S. § 114 (2016); M.R.U. Crim. P. 42; M.R. Civ. P. 66(c), the trial court (Franklin County, *Stokes, J.*) entered a judgment on the contempt verdict and sentenced Murphy to 364 days in jail.

Murphy appeals, and, subject to a clarification of the nature of the adjudication, we affirm that judgment.

[¶2]  The evidence supporting the finding of contempt was uncontested at trial and is more than sufficient to support the contempt finding.  The testimony provided unequivocal evidence that Murphy was, again, collecting a number of animals.

[¶3]  Although Murphy has appealed the contempt judgment, she does not contest the facts supporting the finding of contempt.  Instead, as she did at trial, she presents a litany of frivolous and irrelevant challenges to the authority of all involved in her case.  Primarily, she argues that (1) the trial court had no jurisdiction to hear the matter, (2) the appointments of both the trial judge and the prosecutor to their offices were defective, (3) her two prior convictions are void, and (4) the trial judge was biased against her.

[¶4]  Contrary to her arguments, the court had jurisdiction, *see State v. Pelletier*, 2015 ME 129, ¶¶ 3, 5, 125 A.3d 354; the appointments of the judge and the prosecutor were not infirm, *see* Me. Const. art. V, pt. 1, § 8; 4 M.R.S. § 101 (2016); 30-A M.R.S. § 272 (2016); the prior convictions are valid, *see Murphy*, 2010 ME 140, ¶¶ 1-3, 10 A.3d 697; *State v. Murphy*, Mem-06-125 (July 27, 2006); *see also* 17 M.R.S. § 1031(3-B)(B) (2016); and the record demonstrates

no bias on the part of the judge. To the contrary, the judge consistently treated Murphy with respect, in stark contrast to her disruptive and contemptuous treatment of the judge. We do not discuss those challenges further. *See Murphy*, 2010 ME 140, ¶ 2, 10 A.3d 697.

[¶5] Murphy additionally contends that the State and the court violated her constitutional rights in conducting the proceedings. The record reflects just the opposite. We briefly examine this challenge only to recognize the trial court's patient and focused actions to protect Murphy's constitutional rights and assure that she received a fair trial despite her uncooperative, disruptive, insolent, and disrespectful behavior during the trial.

## I. BACKGROUND

A.    Prior Convictions

[¶6] The events leading up to this case began at least as early as a 2004 case in which Murphy was convicted of cruelty to animals. Murphy appealed, alleging Fourth Amendment violations that to this day she insists made that proceeding and each subsequent proceeding void. *Murphy*, Mem-06-125 (July 27, 2006). We affirmed her conviction in that case. *Id.* When Murphy was convicted a second time of cruelty to animals—and other crimes—the court

4

(*Murphy, J.*)[1] included the lifetime prohibition on owning or possessing animals in its judgment. *See* 17 M.R.S. § 1031(3-B)(B). We affirmed that conviction as well. *Murphy*, 2010 ME 140, ¶ 19, 10 A.3d 697.

B. Contempt

[¶7] On September 25, 2014, after receiving information from Murphy's neighbor that she was again possessing animals, the State filed a complaint alleging that Murphy was keeping or possessing dogs or cats in violation of her lifetime prohibition against owning or possessing animals. The State's complaint sought punitive sanctions against Murphy for contempt of court. *See* 4 M.R.S. § 114; M.R.U. Crim. P. 42; M.R. Civ. P. 66. On October 1, 2014, police and animal welfare personnel executed a search warrant at Murphy's home, where they seized four dogs, five chinchillas, two rabbits, two cats, and a potbellied pig. Murphy was served with a uniform summons and complaint for contempt on the same day.

[¶8] Almost immediately, and without the assistance of counsel, Murphy began filing a plethora of court papers. Murphy's inscrutably dense filings, all based on fanciful and jumbled legal theories, alleged a variety of structural and

---

[1] The trial court and the defendant are not related. *State v. Murphy*, 2010 ME 140, ¶ 2 n.3, 10 A.3d 697.

procedural defects that she insisted had divested the Superior Court of jurisdiction to hear the case, violated her constitutional rights, and voided any prior judgments. Although it is not clear whether Murphy is relying on admiralty law or the Uniform Commercial Code, none of her theories has a basis in Maine law, applicable federal law, or constitutional concepts.

[¶9] Nor did Murphy attempt to address her challenges to the court in a coherent fashion. Instead, the docket entries reveal that Murphy failed to appear for hearings, and yet, despite the eventual appointment of counsel to represent her, she continued to file copious documents in the trial court, including two interlocutory appeals, all of which extended the proceeding over the following two years.

C. Trial

[¶10] Finally, on November 16, 2016, after considerable effort to document that Murphy had notice of the trial date, the court held a jury trial. Murphy elected to represent herself after the court had appropriately warned her that representing herself could put her at a disadvantage, that she would be subject to the same rules as an attorney would be, and that she was entitled to appointed counsel. *See State v. Hill*, 2014 ME 16, ¶¶ 6-8, 86 A.3d 628. The court appointed standby counsel who had previously worked with Murphy to act as

6

Murphy's "assistant" during parts of the trial. The court even exceeded due process requirements by allowing Murphy to be seated at a table behind the bar and to be accompanied by a personal support person, Richard Suchar,[2] with whom she was allowed to consult during the trial.

[¶11] Murphy made an opening statement in which she accused the court of not understanding the Constitution and contended that her 2004 conviction was "void." Two police officers and an animal welfare agent testified for the State, and Murphy declined to cross-examine them. The 2010 judgment and commitment prohibiting her possession of animals was admitted in evidence, as were other documents. The State's evidence, unrebutted by Murphy, demonstrated that she was, again, acquiring animals; that her house was severely cluttered; that several rooms were soaked in animal urine and feces; and that Murphy did, in fact, possess animals in defiance of the court order.

[¶12] After the State rested, Murphy testified on her own behalf. Murphy's testimony echoed her opening statement, insisting that the court had no jurisdiction to decide the case against her. She also directly challenged the

---

[2] Suchar has, himself, challenged the authority of a number of state actors in other matters. *See State v. Suchar*, Mem-11-148 (Sept. 29, 2011); *State v. Suchar*, Mem-11-1 (Jan. 27, 2011).

prosecutor's authority, asserting that his appointment was somehow defective and therefore the proceeding was a nullity. Murphy's court-appointed counsel then called and briefly examined each of the State's witnesses.

[¶13] After Murphy made a closing statement in which she again insisted that the entirety of the proceedings against her violated her constitutional rights, the jury found Murphy in contempt. Two days later, and before the court issued a judgment on the verdict, Murphy filed a notice of appeal.

[¶14] Addressing Murphy at sentencing on December 2, 2016, the court said, "I cannot imagine a situation where a defendant has been more contemptuous of lawful court authority than Ms. Murphy has." Turning to the imposition of a punitive sanction, the court stated, "[A]s I understand the law with respect to plenary contempt, it must be treated as a Class D offense. So the maximum penalty that I may impose is a 364-day sentence. . . . A fine means nothing in this case; it accomplishes absolutely nothing."

[¶15] The court entered a judgment on the verdict on December 2, 2016, sentencing Murphy to 364 days' imprisonment.[3] The judgment classified the adjudication of contempt as a Class D crime. Murphy's notice of appeal was

---

[3] The State does not challenge the court's determination that the length of the sentence was limited by law to 364 days.

8

docketed on December 15, 2016. *See* M.R. Civ. P. 66(c)(5); *see also* 15 M.R.S. §§ 2115, 2115-B(1) (2016); M.R. App. P. 2(b)(1), (b)(2)(A).

## II. DISCUSSION

[¶16] The court's actions here demonstrate the court's patient diligence in assuring that Murphy received the fairest trial possible despite her obstinate refusal to respond to the elements of the charge against her. The court appointed counsel to assist Murphy and warned her of the potential consequences of representing herself when she largely refused counsel's assistance. Murphy received considerable latitude in her testimony and in her opening and closing statements. The court responded with consistent restraint to Murphy's disrespectful and disruptive behavior and maintained the integrity of the proceeding to its completion.

[¶17] Murphy received all of the due process safeguards provided by Maine Rule of Civil Procedure 66(c). She had notice of the contempt charge, an opportunity to be heard, and a full opportunity to present evidence. *See* M.R. Civ. P. 66(c)(2); *see generally* M.R.U. Crim. P. Her case was heard by a properly constituted jury in a trial in which the jury found beyond a reasonable doubt that she was in contempt. *See* M.R. Civ. P. 66(c)(2)(D). Murphy had access to appointed counsel throughout the trial. *See* M.R. Civ. P. 66(c)(2); M.R.U.

Crim. P. 44(a)(1).  Without question, Murphy received the fair trial to which the

Constitution entitles her.[4]

The entry is:

> Judgment corrected by striking the "Class D" classification of the adjudication of contempt.  As modified, judgment affirmed.

---

Carol Ann Murphy, appellant pro se

Andrew S. Robinson, District Attorney, and Joshua W. Robbins, Asst. Dist. Atty., Office of the District Attorney, Farmington, for appellee State of Maine

Franklin County Unified Criminal Docket docket number CR-2014-950
FOR CLERK REFERENCE ONLY

---

[4] We note, sua sponte, that the classification of the contempt adjudication on the judgment and commitment as a Class D crime is not correct.  The rule's reference to a Class D crime assures that the defendant receives all the protections a defendant would receive when charged with a Class D crime, but the adjudication of contempt stands alone.  M.R. Civ. P. 66(c)(2); *State v. St. Onge*, 2011 ME 73, ¶ 17, 21 A.3d 1028.  On return to the Superior Court, the docket entries must be corrected to indicate that Murphy was convicted of contempt and sentenced to 364 days in prison.  *See St. Onge*, 2011 ME 73, ¶ 18, 21 A.3d 1028.