MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 18
Docket:       Jud-17-2
Submitted
  On Briefs:  November 29, 2017
Decided:      January 25, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN THE MATTER OF ROBERT M.A. NADEAU

PER CURIAM

[¶1] In May 2017, the Committee on Judicial Responsibility and Disability filed a report with us in our capacity as the Supreme Judicial Court alleging that former York County Probate Judge Robert M.A. Nadeau violated Rule 2.11(A) of the Maine Code of Judicial Conduct[1] when he participated in the parties' resolution of a case after acknowledging that he would be required to recuse for bias if an evidentiary hearing in the matter were necessary. We conclude that Judge Nadeau's[2] conduct constituted a violation of Rule 2.11(A), and we impose a public reprimand.

---

[1] Because the conduct at issue occurred after September 1, 2015, the current Code of Judicial Conduct applies. M. Code Jud. Conduct II.

[2] Although Robert M.A. Nadeau no longer holds judicial office, he will be referred to as "Judge Nadeau" for purposes of this opinion because he was a sitting judge at the time the conduct at issue occurred. *See In re Nadeau*, 2017 ME 121, ¶ 2 n.1, 168 A.3d 746.

## I. FACTS AND PROCEDURE

[¶2] The facts are not disputed. On August 6, 2015, Judge Nadeau appointed Kerri Gottwald to serve as guardian for the minor daughter of Devora Gavel. Sometime thereafter Gavel made negative social media postings concerning Judge Nadeau, to which a person using the name of Judge Nadeau's wife responded. Judge Nadeau acknowledges in his brief that he was aware of Gavel's postings.

[¶3] In April 2016, after Judge Nadeau was made aware of Gavel's postings, Gottwald asked the York County Probate Court to order Gavel to pay child support. In an order signed May 2, 2016, directing the Register of Probate to schedule a hearing on Gottwald's request, Judge Nadeau noted that "[t]he Court may also consider the undersigned judge's disqualification at the hearing."

[¶4] On June 27, 2016, Gavel's counsel filed a "motion to transfer," asking that Judge Nadeau recuse and that the case be heard by another judge, citing (1) former M. Code Jud. Conduct Canon 3(E)(2) (Tower 2014);[3] (2) Judge Nadeau's own suggestion that his disqualification might be required;

---

[3] Former Canon 3(E)(2) provided that, "A judge . . . shall disqualify himself or herself on a motion for recusal made by a party, in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." M. Code Jud. Conduct Canon 3(E)(2) (Tower 2014).

and (3) Gavel's wishes.  On July 5, 2016, the day of the scheduled hearing, Gavel filed a pro se motion to recuse, citing the negative social media exchange that she had had with "Judge Nadeau and/or his wife," and asserting that "Judge Nadeau is biased against me and therefore should have recused himself upon my request on June 27th, and in fact should have recused himself without my insist[e]nce."

[¶5]  The matter proceeded to a hearing on July 5 at which both parties were represented by counsel.  At the outset, Judge Nadeau acknowledged both Gavel's pro se motion to recuse and her counseled motion to transfer.  He then stated that "[t]he only issue before the Court . . . is child support"; discussed the "generally rote" nature of child support calculations; inquired of Gottwald's counsel whether Gottwald contested the income that Gavel reported in her child support affidavit; and asked Gavel's counsel to confirm the amount, source, and effective date of that income.  During that discussion, Gavel's counsel advised Judge Nadeau that Gavel was "uncomfortable" with proceeding, "feeling that in her view . . . there is possibly some reason for something to go more harshly against her."  Gottwald's counsel advised the court that, "I'm not satisfied that [the income information provided by Gavel] is the information to be used for calculation of [child support]."

4

[¶6]  At that point, after asking Gottwald's counsel, "So how do you want to proceed?" Judge Nadeau said,

> So then if I am charged with having to do a hearing as opposed to just having agreed upon numbers, then I have to assess credibilities.  And, at this point, because I do have problems with Ms. Gavel's credibility, I would then have to grant the motion to recuse.

[¶7]  Gottwald's counsel expressed confusion as to why Judge Nadeau was taking that stance and noted that "[i]f the Court had a hearing before and had an issue with credibility and the Court issued an order based on that, there's no grounds for recusal."[4]  After asking counsel whether he had seen "what Ms. Gavel has just submitted," Judge Nadeau advised that "if there were an evidentiary hearing, I think, it would be appropriate for me to disqualify myself."

[¶8]  Gottwald's counsel then said that he would advise Gottwald to "accept the child support now just based on the numbers that are before [the court] . . . [a]nd that . . . avoids an evidentiary hearing, I suppose."  Judge Nadeau responded, "Okay.  I mean, it's up to [Gottwald].  I don't want to deprive her of her right to have a hearing.  But if she doesn't want to contest the numbers that

---

[4] Counsel was correct.  We have said that "[g]enerally, knowledge gained in a prior proceeding is not a sufficient ground to recuse a judge in a subsequent matter."  *In re J.R. Jr.*, 2013 ME 58, ¶ 17, 69 A.3d 406 (quotation marks omitted); *see* M. Code Jud. Conduct R. 2.11(A)(1).

Ms. Gavel is presenting, that's easy." Gavel's counsel, after a private discussion with her client, told the court that Gavel would accept a child support order requiring her to pay $23 per week based on income of $240 per week.

[¶9] Gottwald's counsel then asked for "stipulations" to the child support order that would require Gavel to provide annual documentation verifying her income. Gavel demurred, stating through counsel that she "probably would not agree to that. . . . She's really uncomfortable with the exchange of any information." Judge Nadeau responded that "[i]t's normally what we see in child support matters . . . [Gottwald's] request is pretty standard, at least insofar as the reporting is concerned." To this, Gavel's attorney said, "We'd be satisfied with the Court's ruling."

[¶10] In his brief, Judge Nadeau describes what followed as him serving "in the capacity of a settlement judge only," as he negotiated the retroactive starting date for Gavel's child support obligation, the ongoing income verification that she would be required to provide, and the terms under which she would provide it.[5] At the conclusion of the hearing, Judge Nadeau denied without prejudice Gavel's motions to recuse and to transfer.

---

[5] The final child support order, dated July 5, 2016, required Gavel to pay Gottwald $23.00 per week, retroactive to May 20, 2016. It further provided that

6

[¶11]  Nine days later, Gavel filed a complaint against Judge Nadeau with the Committee on Judicial Responsibility and Disability, asserting, in part, that "it is my belief that Nadeau *intentionally refused* to recuse himself, with full knowledge and awareness of his *clear bias*, in an effort to retaliate against, humiliate and bully me for speaking out against him in the upcoming election." (Emphasis in original.)  The Committee reported the matter to us and recommended disciplinary action against Judge Nadeau for violating Rule 2.11(A).  Both the Committee and Judge Nadeau filed briefs and the report is now in order for our consideration.

## II.  DISCUSSION

### A.  Judicial Misconduct

[¶12]  The Maine Supreme Judicial Court "has exclusive original jurisdiction in matters of judicial discipline."  *In re Nadeau*, 2017 ME 121, ¶ 3,

---

Devora Gavel shall report to the Court within 7 days after she secures any form of new employment the name and address of her employer and she shall submit to the Court an [updated] Child Support Affidavit with satisfactory evidence from the employer with the actual or prospective amount of her compensation whereupon the Register shall notify [Gottwald] through her attorney that employment has been secured and shall supply a copy of the Child Support Affidavit and supporting documents and a hearing shall be scheduled forthwith to review child support adjustments.  Further, Devora Gavel shall provide to the Court by not later than January 31, 2017 a copy of all W-2's she received for tax year 2016 and shall provide to the Court by not later than April 20, 2017 a copy of her 2016 income tax returns, all copies to be held under seal by the Court and not released to [Gottwald] or her counsel unless the documents demonstrate that further income from employment received by Devora Gavel after the date of this order has been received, noting that any recalculation may be made retroactive to the receipt of any additional income.

168 A.3d 746 (quotation marks omitted). As a judge of the Probate Court at the time of the hearing in this matter, Judge Nadeau was required to comply with Rule 2.11(A) of the Maine Code of Judicial Conduct. M. Code Jud. Conduct I(B). The Rule provides, in part:

> (A) A judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or the judge has personal knowledge of facts that are in dispute in the proceeding when the personal knowledge that would form the basis for disqualification has been gained outside the regular course of present or prior judicial proceedings.

M. Code Jud. Conduct R. 2.11(A)(1).

[¶13] Because of the combined effect of Judge Nadeau's wife's direct contact with Gavel through social media postings that Judge Nadeau was aware of, and Judge Nadeau's acknowledgement that he had a bias that would require his recusal, Rule 2.11(A) required Judge Nadeau to recuse. Judge Nadeau acknowledged that he harbored a bias against Gavel at the outset of the hearing. The source of that bias was evidently the extra-judicial negative social media exchange involving Gavel, because when Gottwald's counsel pointed out that a credibility determination based on a prior court proceeding did not require

recusal, Judge Nadeau referenced Gavel's pro se motion to recuse, in which she cited only the social media exchange, and then again said that "if there were an evidentiary hearing, I think, it would be appropriate for me to disqualify myself." Despite the litigant's indication that she was "uncomfortable" with the process, Judge Nadeau actively participated in negotiating and ultimately approving the final result, which, as evidenced by the detailed directive to Gavel concerning her potential future income, *see supra* n.5, required considerable judicial involvement.

[¶14] Judge Nadeau's actions were contrary to Rule 2.11(A)(1), which mandates recusal when "[t]he judge has a personal bias or prejudice concerning a party." M. Code Jud. Conduct R. 2.11(A)(1). The Rule, using the command "shall," leaves no room for judicial discretion in that circumstance, and the parties had no power to waive Judge Nadeau's disqualification for personal bias. *See* M. Code Jud. Conduct R. 2.11(C) (providing that parties may agree to waive a judge's disqualification "other than for bias or prejudice under section A of this Rule").

[¶15] We emphasize that "judges should avoid recusal in situations when parties engage in actions seeking to cause recusal." *State v. Murphy*, 2010 ME 140, ¶ 18, 10 A.3d 697. We also recognize that rulings against a

litigant or knowledge gained by a judge in a prior or related court proceeding, including impressions of a litigant's personal history or credibility, are not sufficient grounds to recuse a judge in a subsequent matter. *See Dalton v. Dalton*, 2014 ME 108, ¶ 25, 99 A.3d 723; *In re J.R. Jr.*, 2013 ME 58, ¶¶ 17-18, 69 A.3d 406.

[¶16]  Two factors distinguish this matter from cases where a party to litigation engages in actions seeking to cause recusal or where a judge has made decisions or gained information about a litigant in a prior or related court proceeding that causes the litigant to seek the judge's recusal from the proceeding.  First, Gavel made negative social media postings about Judge Nadeau after he had awarded guardianship of her daughter to Gottwald, and Judge Nadeau's wife, or someone in his household, responded to those postings outside of the normal course of judicial proceedings.  Second, Judge Nadeau recognized his potential disqualification sua sponte in a scheduling order that he signed almost two months before Gavel first asked him to recuse.

[¶17]  This is not a case where recusal is at issue "merely because a completely unfounded claim of prejudice is lodged against [a judge]." *Murphy*, 2010 ME 140, ¶ 18, 10 A.3d 697 (alteration and quotation marks omitted). Judge Nadeau appropriately determined, in saying that he would "have to grant

the motion to recuse" if an evidentiary hearing were required, that the effect of the social media exchange with Gavel meant that "[his] impartiality might reasonably be questioned" should he continue. M. Code Jud. Conduct R. 2.11(A).

B.      Sanction

[¶18]   Having found that Judge Nadeau violated the Rule, we must consider an appropriate sanction. In our decision concerning Judge Nadeau's most recent appearance before this Court for a violation of judicial ethics, we said that

> [i]n fashioning an appropriate sanction, we examine multiple factors, including the judge's professional history, the context within which the violations occurred, the harm to the litigants and public, the seriousness of the violations, the judge's acknowledgement of the violations and understanding of the impact on the litigants, and the prospects for ensuring public trust and confidence in the judge's work in the future. A sanction must be sufficient to deter the individual being sanctioned from again engaging in such conduct and to prevent others from engaging in similar misconduct in the future.
>
> We have the inherent authority to impose a variety of sanctions as judicial disciplinary measures—some of which Judge Nadeau has already been subject to. Available sanctions include, but may not be limited to, requirements for obtaining appropriate assistance or ethics education, censure, reprimand, forfeiture of funds, suspension from duties, and disbarment or the lesser sanction of suspension from the practice of law.

*In re Nadeau*, 2017 ME 121, ¶¶ 2 n.2, 60-61, 168 A.3d 746 (citations and quotation marks omitted).

[¶19]  We conclude that although a sanction resulting from this violation is warranted in order to deter others from similar misconduct, in Judge Nadeau's case that need is tempered by the reality that he is no longer a judicial officer and is currently serving a lengthy suspension from the practice of law.  *Id.*  ¶¶  2  n.1,  63.  Accordingly, we accept the Committee's recommendation and hereby order that Robert M.A. Nadeau be publicly reprimanded for violating Rule 2.11(A) of the Maine Code of Judicial Conduct.

The entry is:

> It is ORDERED that former York County Probate Judge Robert M.A. Nadeau be, and hereby is, reprimanded for violation of Rule 2.11(A) of the Maine Code of Judicial Conduct as alleged in the Report of the Committee on Judicial Responsibility and Disability.

---

Cabanne Howard, Esq., Committee on Judicial Responsibility and Disability, Portland, for the Committee on Judicial Responsibility and Disability

Robert M.A. Nadeau, pro se